NUMBERS 13-06-651-CR

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MARILU LOZANO ROJAS, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 103rd District Court of Cameron County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza


 After a jury trial, appellant, Marilu Lozano Rojas, was convicted of possession of a
controlled substance, in an aggregate weight of four grams or more but less than 200
grams; possession of marihuana; unlawful possession of a firearm by a felon; and delivery
of a controlled substance in an aggregate weight of less than 1 gram. By two issues, Rojas
challenges her convictions, contending: (1) that she was denied her right to present a
defense, and (2) that the trial court abused its discretion in denying her motion for mistrial
based upon the State's improper closing argument. We affirm.

I. BACKGROUND

 In April 2005, Cameron County Investigator Miguel Rodriguez began receiving
information that drug deals were taking place at the home that Rojas shared with her
husband, Gilberto Rojas. (1) Investigator Rodriguez set up surveillance at the Rojases' home. 
After observing several people drive up to the home, approach the front door, and leave in
under one minute, police stopped one of the vehicles. Police found cocaine on David
Perez, the driver of the car. Perez agreed to help the police conduct a controlled buy to aid
the police in obtaining a search warrant for the Rojases' home. Investigator Carlos Martinez
rode with Perez to the Rojases' home and remained in Perez's car while Perez attempted
to purchase drugs from the Rojases' residence. Meanwhile, with binoculars, Investigator
Rodriguez observed the controlled buy from 300 yards away.

 Investigator Rodriguez testified that Perez was greeted at the front door of the
Rojases' residence by Marilu Rojas. Perez and Rojas spoke for about fifteen seconds and
then Rojas went inside the house and closed the door while Perez waited outside. Less
than one minute later, Investigator Rodriguez saw Rojas come out of the house and meet
again with Perez. Perez returned to his car and Rojas went back inside her residence. 
During his testimony, Investigator Rodriguez admitted that he did not see Rojas hand plastic
bags to Perez. However, after returning to the car, Perez and Investigator Martinez drove
to a constable's office. At the constable's office, they presented four plastic bags containing
cocaine, purportedly obtained from the Rojas' residence, to a constable. Perez also
performed an additional controlled buy for the police. In the second buy, Perez met Rojas'
husband, Gilberto, at the carport entrance of the house. Gilberto then went inside the
house, and after about two or three minutes, Gilberto came back outside and met
momentarily with Perez. Perez then walked back to his car and departed with four plastic
bags of cocaine.

 After the controlled buys, Investigator Rodriguez obtained and executed a search
warrant of the Rojas' residence. On a dining room table inside the home, police found 59
plastic bags containing varying amounts of cocaine. (2) Plastic bags containing marijuana
were also found. Green plastic ties, similar to the type used in the controlled buys, were
found. In addition to narcotics, police also found over seventeen weapons, including
semiautomatic assault rifles, in the house. Some of the guns were found placed around the
house while others were found in a safe. Investigator Rodriguez was unable to obtain the
combination to the safe from Rojas, and had to obtain the combination from her husband
and son. 

 During the raid, the police also discovered that the Rojas' home was protected by a
surveillance system, in which an outside camera by the carport was connected to an inside
monitor for viewing. A box of ammunition was found next to the surveillance monitor. 
Additionally, two money bags were found on an ironing board. (3) When the raid was
complete, Investigator Rodriguez arrested Gilberto Rojas. Marilu Rojas was not arrested
at the time of the raid. (4) 

 After the raid, Marilu Rojas was charged by complaint and information of the offense
of possession of a controlled substance with the intent to deliver. Tex. Health & Safety
Code Ann. § 481.112(a), (d) (Vernon 2003). On September 30, 2005, Rojas waived the
indictment and pleaded guilty. At the punishment hearing on November 10, 2005, the trial
court advised Rojas that it would not follow the plea agreement and would instead sentence
her to serve two years' imprisonment. The trial court reset the punishment hearing to allow
Rojas an opportunity to decide whether to enter her plea of guilty or proceed to trial. On
November 21, 2005, Rojas withdrew her plea of guilty and the matter was set for trial.

 On January 25, 2006, Rojas was indicted for the offenses of possession of controlled
substance with intent to deliver, see Tex. Health & Safety Code Ann. § 481.112(a), (d);
possession of marihuana, see Tex. Health & Safety Code Ann. § 481.121(a), (b)(3)
(Vernon 2003) with a habitual count, see Tex. Penal Code Ann. § 12.42(2)(B) (Vernon
2003), unlawful possession of firearm by felon, see Tex. Penal Code Ann. § 46.04(1)(A)(1)
(Vernon 2003), and delivery of a controlled substance, see Tex. Health & Safety Code
Ann. § 481.112(a), (c) (Vernon 2003). Rojas pleaded not guilty to all offenses as charged.

 Rojas was subsequently convicted of possession of controlled substance, in an
aggregate weight of four grams or more but less than 200 grams; possession of marihuana;
unlawful possession of a firearm by felon; and delivery of controlled substance in an
aggregate weight of less than 1 gram. This appeal ensued.


II. Discussion

A. Exclusion of Evidence

 In her first issue, Rojas asserts that she was denied her constitutional right to present
a defense when she was not allowed to introduce evidence concerning a collateral forfeiture
proceeding. See Tex. Const. art. I, § 10 (setting forth rights of accused in criminal
prosecutions, including right to be heard and to present evidence); Potier v. State, 68
S.W.3d 657, 665 (Tex. Crim. App. 2002). Specifically, Rojas sought to introduce civil
forfeiture petitions as exhibits during the cross-examination of State's witness, Investigator
Rodriguez, to show the "greed" of the State in pursuing criminal charges against her. The
State responds that Rojas failed to preserve her complaint for review because she did not
adequately lodge an objection on state constitutional grounds. See Tex. R. App. P. 33.1. (5) 
 The following colloquy, held outside the presence of the jury and just before closing
arguments, is relevant in our determination of whether the issue was preserved: 

[Defense Counsel]: Real quick on the record - - I'm sorry - - the reason that
I believe that it would be relevant or admissible, just on
the record, Judge, and that I ask for a ruling, is because
I think it is relevant to bring forward the bias or motive
from the State's witnesses. 


 Two, under Texas Rules of Evidence 607, it goes to the
credibility of the witnesses which is something that the
jury should consider since the jury is the exclusive
judges [sic] of the facts under 38.04 of the Code of
Criminal Procedure. And I believe - - not being able to
argue to the extent, I guess, I was asking about, bias
and motive of the witness, that would be denying my
client due process, and due course of law, under the
Fifth and Fourteenth Amendments of the United States
Constitution, and Article One, Section 9 and 10 of the
State Constitution, and it also denies my right to a fair
trial . . . .

 

 . . . .


[Trial Court]: Is this in the form of an objection, then, or a response to
the previously entered limine item?


[Defense Counsel]: I guess that's the basis of - -


[Trial Court]: Your objection - - well, as I said, I granted the relief
requested subject to the caveats I stated yesterday. 
That remains in effect.

 

 Your objection is noted. Your objection is overruled, if it
is an objection - - 


[Defense Counsel]: I guess I don't know what it is technically called.


[Trial Court]: - - it wasn't in the form of an objection, but you protected
yourself on the record both on the limine yesterday and
now with this "vague objection" that you're making now.

Based on the above exchange, we conclude Rojas properly raised her due process--right
to present a defense--issue before the trial court. Moreover, we conclude the "objection"
was not vague or merely a "shotgun" objection as the State contends. See Webb v. State,
899 S.W.2d 814, 818 (Tex. App.-Waco 1995, pet. ref'd) (noting that "shotgun" objections,
citing many grounds for the objection without argument, will not preserve points based on
authority which is merely mentioned in the trial court). Accordingly, we proceed to address
Rojas' complaint.

 Recently, the Texas Court of Criminal Appeals has ruled that "the exclusion of a
defendant's evidence will be constitutional error only if the evidence forms such a vital
portion of the case that exclusion effectively precludes defendant from presenting a
defense." Potier, 68 S.W.3d at 665. 

 At trial, part of Rojas' defense was that the charges she faced actually belonged to
her husband, Gilberto Rojas. Another part of her defense consisted of her contention that
the State was motivated by greed in its decision to prosecute her. On appeal, Rojas claims
that the exclusion of the complained-of evidence as hearsay and irrelevant amounted to
constitutional error because it prevented her from effectively presenting her defense. See
id. 


 Although the trial court excluded the civil forfeiture petitions, in presenting her
defense, Rojas was allowed to cross-examine Investigator Rodriguez regarding the
forfeiture proceedings and the items seized during the raid. Rojas was also allowed to
argue her defense of bias or motive during opening statement and closing argument. 
During opening statement, defense counsel stated:

You just heard that vehicles were seized from the house. Well, you're also
going to hear DVDs were seized, play stations and games were seized,
almost generally, everything that was in this house was seized and the state
wants that property. They want it. And when someone or something wants
something bad enough, they are going to go through lengths to get that
property. And one way they do [sic] is to prosecute somebody.


 Because Rojas was able to argue her state bias defense and present the additional
defense that the charges should have only been brought against her husband, we hold that
the exclusion of the complained-of evidence did not "significantly undermine fundamental
elements of the accused's defense," and therefore was not constitutional error. See Ray
v. State, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (concluding that, although the
excluded testimony was in fact relevant, because Ray was not completely prevented from
presenting her defense that the drugs belonged to the driver of the vehicle, the error
committed by the trial court was not of constitutional dimension); Potier, 68 S.W.3d at 666
(citing United States v. Scheffer, 523 U.S 303, 315 (1998) ("That [the defendant] was
unable to . . . present his case to the extent and in the form he desired is not prejudicial
where, as here, he was not prevented from presenting the substance of his defense to the
jury.")); see also Frierson v. State, 839 S.W.2d 841, 849-50 (Tex. App.-Dallas 1992, writ
ref'd). Accordingly, appellant's first issue is overruled. 

B. Mistrial

 In her second issue, Rojas argues that the trial court abused its discretion by denying
her motion for mistrial based upon improper jury argument. Rojas complains about the
following statement, which occurred during the State's closing argument at the
guilt/innocence stage of trial:

There is, however, evidence that [Rojas] went to the door and sold to a
source of information, drugs. So why isn't that source of information here to
tell you about that? Well, could it be because these drug dealers have an
arsenal of weapons? Could it be that? Yes, it could. Could it be that that
source of information doesn't want to come here and have to face a drug
dealer with an arsenal of weapons who still has two sons, or three sons out
there?


Rojas objected to this statement. The trial court sustained the objection, stating, "[a]ll right. 
Let's -- I'll sustain that. We don't need to speculate as to why the C.I. did or did not show
up. Obviously, it speaks for itself." The trial court then immediately instructed the jury,
"Ladies and gentlemen of the jury, obviously, the source of information was not here - - and
you know that. You are to disregard any statement as to why, or why he is not here
because it constitutes speculation. All right?" (6) Rojas then moved for mistrial. The trial
court denied Rojas' request for mistrial. (7) 

 When the trial court sustains an objection and instructs the jury to disregard but
denies a motion for mistrial, the issue is whether the trial court abused its discretion by
denying the mistrial. Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Primes
v. State, 154 S.W.3d 813, 814 (Tex. App.-Fort Worth 2004, no pet.). Only in extreme
circumstances, when the prejudice caused by the improper argument is incurable, that is,
"so prejudicial that expenditure of further time and expense would be wasteful and futile,"
will a mistrial be required. Hawkins, 135 S.W.3d at 77 (citing Ladd v. State, 3 S.W.3d 547,
567 (Tex. Crim. App.1999)). In determining whether the trial court abused its discretion in
denying the mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial
effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. 
Id.; Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) 

 Generally, a prompt instruction to the jury to disregard the objected to testimony will
cure error. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). The determination
of whether an error justifies a mistrial is made by examining the particular facts of the case. 
Id. 

 Here, as a curative measure, the trial court immediately instructed the jury to
disregard the statement. The court's instruction to disregard cured the prejudicial effect, if
any, caused by the State's remarks. See id. It is well settled that if a trial court instructs a
jury to disregard, we must presume that the jury followed the trial court's instruction. Ladd,
3 S.W.3d at 567; Allen v. State, 202 S.W.3d 364, 370 (Tex. App.- Fort Worth 2006, pet.
ref'd). In the present case, the trial court's instruction properly instructed the jury that they
already knew the informant did not show up to testify and that they were to disregard any
statement as to why he failed to testify. 

 Although Rojas contends that "the harm inflicted by the State was not militated by
the instruction to disregard" she cites no cases holding that denying a mistrial under
circumstances such as those presented here is an abuse of discretion, nor does she point
to any supporting evidence in the record for her argument. Accordingly, Rojas has failed
to rebut the presumption that the jury followed the instruction to disregard. 

 Additionally, Rojas contends that the State's argument invoked matters outside the
record to infer that the informant feared for his life. Rojas argues that this deviation from
the record had a substantial and injurious effect on the jury's verdict. Even assuming the
argument was improper, when considering the entire record, including the severity of the
misconduct, the curative measures of the trial court, and the certainty of Rojas' conviction,
we cannot say that the State's remarks were so prejudicial that Rojas' substantial rights
were affected. In fact, during the trial, the jury heard testimony that multiple firearms
(including revolvers and rifles) and plastic bags containing illegal drugs were found in the
Rojases' residence, thereby lessening any prejudicial effect that the State's argument would
have had on the jury.

 Moreover, the conviction is supported by more than ample evidence. The jury heard
testimony that two controlled buys were conducted at the Rojas' residence and that Rojas
was seen selling drugs to the informant during one of the controlled buys. Further,
throughout the trial, the jury heard testimony of weapons and illegal drugs seized when the
search warrant was executed. Based on the testimony given at trial, there is more than
ample evidence to support Rojas' conviction, even absent the State's closing remarks.

 After examining the record as a whole and balancing the appropriate factors, we
conclude that the State's argument was not sufficiently egregious to defeat the presumed
efficacy of the trial court's instruction to disregard. We overrule Rojas' second issue.

III. CONCLUSION

 The judgment of the trial court is affirmed.

 


 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 16th day of August, 2007.

 
1. Rojas' brief refers to her husband as both Gilbert and Gilberto. We herein refer to him as Gilberto.
2. Investigator Rodriguez testified that "nickel," "dime", and "twenty" bags were found on the dining room table. 
He further testified that in the drug trade, "nickel" bags sell for $5 and contain about .8 grams of cocaine,
"dime" bags sell for $10 and contain 1.5 grams of cocaine, and "twenty" bags sell for $20 and contain 3 grams
of cocaine. The bags found in the Rojases' residence were consistent with these descriptions.
3. All of the property seized by police was identified only by the name of Gilberto Rojas.
4. Neither the record, nor the brief of either Rojas or the State indicates the date on which the raid took place. 
Rojas' brief merely states that while Marilu Rojas was not arrested at the time the search warrant was
executed, she was later arrested on October 11, 2005.
5. To preserve error on appeal, the complaining party must make a timely, specific objection and obtain a ruling
on the objection. See Tex. R. App. P. 33.1(a); see also Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App.
2005) (holding appellant did not preserve error as to argument that exclusion of evidence violated Sixth
Amendment because appellant did not refer to the constitution in the trial court and did not put the trial court
on notice that he was alleging a constitutional violation); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim.
App. 1995); Eaves v. State, 141 S.W.3d 686, 690-91 (Tex. App.-Texarkana 2004, pet. ref'd) (holding
appellant failed to preserve error as to trial court's alleged violation of Sixth Amendment by refusal to admit
evidence that child sexual-assault complainant previously had been sexually assaulted, given that appellant
did not voice this argument in the trial court). 


 The point of error on appeal must also comport with the objection made at trial. Broxton, 909 S.W.2d
at 918. Even constitutional errors may be waived on appeal. Id. (holding that defendant waived due process
claim that he was denied right to present his defense because he failed to object at trial on those same
grounds.). 
6. To be permissible, the State's jury argument must fall within one of the following four general areas: (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; or (4) plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992).
7. The State contends the complained-of argument was made in response to defense counsel's argument
concerning the existence of the confidential information or why the informant, David Perez, III, would not
appear on the stand against Rojas. Specifically, during closing argument, defense counsel stated:


Look at when this testimony about Mrs. Rojas develops. It is not when they turned in this
evidence that they are supposedly saying that she handed it over to a confidential informant
who -- we don't know -- even exists. 


Did you meet David Perez, III, on the stand? Did you see any pictures of him? Did you hear
any audiotape of him? Did you see any videotape of him? No, I'm sorry, you didn't . . . .