# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00628-CR

**Braulio Briones a/k/a Bravlio Briones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-07-302598, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Bravlio Briones of the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b) (West 2003). Punishment was assessed at thirty years' imprisonment. In a single issue on appeal, Briones asserts that the district court abused its discretion in excluding as hearsay evidence that, according to Briones, was critical to his defense at trial. We will affirm the judgment.

## BACKGROUND

Because Briones does not challenge the sufficiency of the evidence supporting his conviction, we need not discuss in detail the evidence presented during trial. Briefly, the jury heard testimony that on the night of October 14, 2007, Briones and his cousin, Juan Salas, went to a bar on North Lamar in Austin and proceeded to get into a fight with three individuals—Javier Malata,

Eris "Manolo" Hernandez, and Marvin Rencinos. Of those five participants in the fight, only Hernandez and Briones testified at trial. Hernandez testified that during the course of the fight, Briones stabbed Malata in the back with a knife. Then, according to Hernandez, Briones got into his truck and drove it around the parking lot in circles, hitting several cars and two people—Jose Rodriguez, a patron of the bar who was not involved in the fight, and Rencinos. After hitting Rencinos with his truck, Hernandez recalled, Briones backed up and hit Rencinos with his truck a second time. Immediately thereafter, Hernandez testified, Briones got out of the vehicle and stabbed Rencinos with his knife. Briones then ran away.

Rencinos was transported to the hospital where he later died. The medical examiner attributed the cause of death to both blunt force trauma from being hit twice by the truck and sharp force trauma from being stabbed. The medical examiner explained that the knife had punctured one of Rencinos's lungs, resulting in massive blood loss and oxygen deprivation to his brain, while the truck had severely fractured and tore Rencinos's legs, also resulting in significant blood loss.

Briones was later apprehended in San Antonio and charged with the murder of Rencinos.[1] Briones's theory at trial was that he had acted in self-defense and in defense of his cousin. Briones testified that he had consumed "about 11 beers" that night and was drunk during the altercation. The incident began, Briones recalled, when he called Malata a "son of a bitch." That statement, according to Briones, had prompted Malata and the other men to come toward him and his cousin in a "threatening" manner. To defend himself, Briones claimed, he had stabbed Malata and then retreated to his truck. Then, Briones continued, after he got into his truck, he observed

---

[1] The other individual whom Rencinos allegedly stabbed, Malata, survived his injuries.

2

Rencinos either punching or "trying to hit" his cousin. Briones admitted that he then hit Rencinos with his truck (he did not recall hitting him a second time), got out of the truck, and stabbed Rencinos with his knife. Briones did so, he claimed, to protect his cousin. On cross-examination, Briones admitted that he had not observed any of the claimed aggressors, including Rencinos, use or display a weapon during the altercation.

The jury was instructed on the law of self-defense, *see id.* § 9.31 (West Supp. 2009), deadly force in defense of a person, *see id.* § 9.32 (West Supp. 2009), and defense of a third person. *See id.* § 9.33 (West 2003). The jury found Briones guilty of murder as charged in the indictment and assessed punishment at thirty years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse-of-discretion standard. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The trial court does not abuse its discretion unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

## ANALYSIS

In his sole issue, Briones claims that the district court abused its discretion in excluding as hearsay evidence that, according to Briones, supported his claim that he had killed Rencinos while defending his cousin. During the investigation, Officer Ronald Ruiz of the Austin Police Department took statements from three eyewitnesses to the fight who, according to

3

Briones, could not be located in time for the trial. One of these eyewitnesses was Escude Calderon.[2]

Because Calderon did not speak English, Ruiz interviewed him with the assistance of Officer Bradley Herries, who, according to Ruiz, was more fluent in Spanish than he was. Outside the presence of the jury, Ruiz explained that Herries asked Calderon questions and conveyed Calderon's answers to Ruiz. Then, Ruiz "wrote down a paraphrase of what [Herries] said." When asked if he had any reason to question whether Herries was accurate in his translation, Ruiz testified, "I mean, he did what I asked as far as I know." However, Ruiz added that Herries "would probably have more license" to "change the question a little bit" and "sometimes you don't phrase things quite so well and you get the gist of what he translates for me."

Briones elicited the following testimony from Ruiz concerning his interview of Calderon:

> Q: And what you wrote down or paraphrased was that Mr. Escude Calderon told you that he and [the other two eyewitnesses] were leaving the [bar] is when Mr. Escude noticed Mecino [sic], which is Marvin, and a Hispanic male wearing a black shirt were fighting in the parking lot.
>
> A: Yes, sir.
>
> Q: Is that what you put down in your report?
>
> A: That's what I put down in my report, yes, sir.
>
> Q: Further, it says Escude stated that someone in the parking lot yelled that the guy had a punta; is that correct?

---

[2] The other two eyewitnesses were Gustavo Mendoza and Perez Ordonez. Although Briones mentions them in his brief, he does not discuss what they told Officer Ruiz, nor did he make an offer of proof during trial concerning their statements. Accordingly, we limit our discussion to Calderon.

4

A:     Yes, sir.

Q:     And, further, Escude stated he did not see a knife. Escude stated that a grey truck backed up and started driving circles in the parking lot. And Escude stated he believed that he thought the grey truck crashed into the parked cars on purpose to help his friend in the black shirt. Is that what you wrote down?

A:     Yes, sir.

Q:     And, in fact, there was a crash at that scene, correct?

A:     Yes, sir.

Q:     So the physical evidence of the crash corroborated what this man said, correct?

A:     Yes, sir.

The State objected to the above testimony on the basis of hearsay, and the district court sustained the State's objection.

On appeal, Briones does not challenge the district court's determination that the testimony was hearsay. Rather, he claims that the testimony should have been admitted in spite of the hearsay rule because it was "crucial to the defendant's right to a fair trial," "completely undermines [Hernandez's] credibility," and "supports Appellant's testimony that he was defending his cousin."

The U.S. Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683, 689-690 (1986). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "The right to present relevant testimony . . . . 'may, in appropriate cases,

5

bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). One such legitimate interest is ensuring that "reliable evidence is presented to the trier of fact in a criminal trial." *Scheffer*, 523 U.S. at 309. As the Supreme Court has explained, this is the reason why hearsay is generally excluded from trial:

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Chambers*, 410 U.S. at 298.

However, "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id*. at 302. In other words, the hearsay rule should not be used to exclude evidence that is "critical" to the defendant's case. *Id*. Excluding such critical evidence denies the defendant "a trial in accord with traditional and fundamental standards of due process." *Id*. The Texas Court of Criminal Appeals has similarly held that "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

In this case, the out-of-court statements allegedly made by Calderon (as translated by Officer Herries and paraphrased by Officer Ruiz) tend to show, at most, that there was a fight

6

between Rencinos and a man "wearing a black shirt" (supposedly Briones's cousin), that Calderon heard "someone in the parking lot" yell that "the guy had a punta," that Calderon "did not see a knife," that Calderon observed a truck drive around the parking lot in circles, and that the driver of the truck "crashed into the parked cars on purpose to help his friend in the black shirt." However, Calderon made no statement tending to show that Rencinos was using or attempting to use deadly force against Briones's cousin at the time Briones hit Rencinos with his truck (either the first or second time) or that Rencinos was still using or attempting to use deadly force against Briones's cousin when Briones got out of his truck and stabbed Rencinos with his knife. Nor did Calderon make any statement tending to show that Briones had a reasonable belief that his actions were immediately necessary to protect his cousin from Rencinos's use or attempted use of deadly force. *See* Tex. Penal Code Ann. §§ 9.31-.33 (listing elements that must be satisfied to prove self-defense, deadly force in defense of person, and defense of third person). Thus, the district court would not have abused its discretion in finding that the hearsay statements at issue were not "vital" to Briones's defense. *See Potier*, 68 S.W.3d at 666 ("Exclusions of evidence are unconstitutional only if they 'significantly undermine fundamental elements of the accused's defense.'") (quoting *Scheffer*, 523 U.S. at 315). Moreover, Briones testified in his defense and was able to present his version of events to the jury in much greater detail than any of the statements allegedly made by Calderon. Thus, the district court's ruling did not deny Briones his right to present a defense. *See Potier*, 68 S.W.3d at 666 (finding that exclusion of evidence did not prevent defendant from presenting his defense when other evidence supporting defense theory, including defendant's own testimony, was admitted). We also observe that in this case, unlike in the *Chambers* case on which Briones

7

relies in his brief, the hearsay statements were not made "under circumstances that provided considerable assurance of their reliability." *See Chambers*, 410 U.S. at 300-01 (explaining that hearsay statements at issue were spontaneous, corroborated by other evidence, and against interest of declarant). Instead, the statements here were translated by an officer who may have "changed the questions a little bit," paraphrased by another officer who was not fluent in Spanish, and included hearsay within hearsay from an unidentified source (the "someone in the parking lot" who yelled that "the guy had a punta"). We cannot conclude on this record that the district court abused its discretion in excluding this evidence.

We overrule Briones's sole issue.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   May 27, 2010

Do Not Publish

8