**Creon Natell POTIER, Appellant,**

v.

**The STATE of Texas.**

**No. 1542–99.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 13, 2002.

---

61. *Wright,* 28 S.W.3d at 537.

Janet Morrow, Spring, for Appellant.

Dan McCrory, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The issues in this case involve the harmless-error rules for the erroneous exclusion of evidence that a defendant offered.

## I. The Case

The jury convicted the appellant of the murder of Willie "Wolf" Ratliff, and the trial judge sentenced him to confinement for 10 years. The appellant's defense was that he acted in self-defense. The trial court excluded testimony of rumors that the appellant and a neighbor had heard from people in his neighborhood that the victim intended to kill him on the day of the shooting. The appellant complains that the trial court's ruling prevented him from effectively arguing that he had acted under a reasonable belief that deadly force was immediately necessary to protect himself against the victim's attempted use of unlawful deadly force.[1]

The Court of Appeals held that the trial court had erroneously excluded the evidence of the rumors in the community that were relayed to the appellant on the day of the shooting,[2] but that the error in this case was harmless because the appellant's self-defense claim had been presented to the jury by other evidence.[3]

To decide whether this error was harmless, the Court of Appeals applied the harmless-error standard in Rule of Appellate Procedure 44.2(b), which is for nonconstitutional errors, rather than Rule 44.2(a), which is the standard for constitutional errors.[4] The courts of appeals have

---

1. See TEX. PENAL CODE § 9.32.

2. See Potier v. State, No. 01–97–00562–CR, slip op. at 7, 1999 WL 430797, at *1, 1999 Tex.App. LEXIS 4328, at *5 (Tex.App.-Houston [1st Dist.] June 10, 1999) (not designated for publication).

3. See id., slip op. at 7–9

4. "(a) Constitutional error." If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a

divided on the issue of which standard to use for similar errors.[5]

We granted review to clarify the use of the standards.

## II. The Harmless-error Standard

The Court of Appeals held that the trial court's hearsay ruling misapplied Rule of Evidence 801(d).[6] It explained that the rumors were not offered to show that they were true, but to show the reasonableness of the appellant's belief that the victim was going to kill him, and therefore, the rumors were not hearsay.[7] On its face, of course, this is not a constitutional error to which Rule of Appellate Procedure 44.2(a) would apply. The appellant argues that the harmless error test of Rule 44.2(a) is appropriate because of "the connection between the defendant's constitutional right to call witnesses to 'make his defense,' and the harmless error standard to be applied when the trial court wrongly excludes such evidence." [8]

### A. Due-process Considerations

■ The appellant is correct to say that the exclusion of a defendant's evidence can amount to a violation of the right to compel the attendance of witnesses in the defendant's favor. But not every erroneous exclusion of a defendant's evidence amounts to a constitutional violation.

### 1. Supreme Court Decisions

The Supreme Court of the United States has explicitly stated that there is no constitutional right to present favorable evidence.[9]

A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus "bow to accommodate other legitimate interests in the criminal trial process." As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or dispro-

---

judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

"(b) Other errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex. R.App. P. 44.2.

5. *See Tiede v. State,* —— S.W.3d ——, No. 12–99–00182–CR, 2000 WL 869390 (Tex.App.-Tyler June 30, 2000, pet. granted) (using standard for constitutional errors); *Tate v. State,* 988 S.W.2d 887, 889–90 (Tex.App.-Austin 1999, pet. ref'd) (using standard for other errors); *Henderson v. Texas,* 906 S.W.2d 589, 598–99 (Tex.App.-El Paso 1995, pet. ref'd) (using standard for constitutional errors).

6. *Potier,* slip op. at 7, 1999 WL 430797, at *1, 1999 Tex.App. LEXIS 4328 at *5.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d).

7. *Ibid.* The State argues that the Court of Appeals' holding was wrong. It did not cross-petition for discretionary review. The question is not before us for review.

8. Brief at 16.

9. *United States v. Scheffer,* 523 U.S. 303, 316, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ("*Chambers* [*v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973),] therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence").

portionate only where it has infringed upon a weighty interest of the accused.[10]

The Supreme Court's cases stand for the limited proposition that certain egregious evidentiary errors may violate the Due Process Clause of the Fourteenth Amendment.[11] The cases in which the Court has found such infringement have been those in which a court followed a state rule that excluded evidence.

The first of these cases may be *Ferguson v. Georgia*,[12] in which the trial court followed a state rule that made a defendant incompetent to testify, and that allowed him to make an unsworn statement to the jury without the assistance of counsel. Georgia was the only state—indeed, the only English-speaking jurisdiction—that still followed such a rule. Although the Supreme Court's reversal was based on the denial of the assistance of counsel, which was the only Sixth Amendment right that had then been recognized as a component of due process, the Court has later recognized that the Georgia rule also was unconstitutional because it denied the defendant the right to testify.[13]

The first case to explicitly hold that due process was denied by a state rule that excluded evidence was *Washington v. Texas*.[14] The state rule forbade persons charged as principals, accomplices, or accessories to be witnesses for one another, although they could be witnesses for the State. The trial court's enforcement of the rule denied the defendant evidence that was relevant, material, and vital.[15] The Court held that the Constitution was violated by the "arbitrary rule."[16]

> We hold that the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense. The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use. The judgment of conviction must be reversed.[17]

---

**10.** *Id.* at 308, 118 S.Ct 1261 (citations and footnote omitted).

**11.** *See Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).

**12.** 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961).

**13.** *See Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

**14.** 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

**15.** *See Washington*, 388 U.S. at 16, 87 S.Ct. 1920 ("It is undisputed that [the witness's] testimony would have been relevant and material, and that it was vital to the defense").

**16.** "In light of the common-law history, and in view of the recognition in the *Reid* case [*United States v. Reid,* 12 How. (53 U.S.) 361,

13 L.Ed. 1023 (1851)] that the Sixth Amendment was designed in part to make the testimony of a defendant's witnesses admissible on his behalf in court, it could hardly be argued that a State would not violate the clause if it made all defense testimony inadmissible as a matter of procedural law. It is difficult to see how the Constitution is any less violated by arbitrary rules that prevent whole categories of defense witnesses from testifying on the basis of a priori categories that presume them unworthy of belief." *Washington*, 388 U.S. at 22, 87 S.Ct. 1920. The Court also found the rule "irrational" and "absurd." *See ibid.*

**17.** *Id.* at 23, 87 S.Ct. 1920. *Cf. Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (four members of the Court holding that a state statute forbade voluntary intoxication from being "taken into consideration in determining the existence of

In the Court's next case, *Chambers v. Mississippi*,[18] the defense was that another person had committed the offense. When the defendant called the person to the witness stand, the trial court enforced a state "voucher" rule that prevented the defendant from cross-examining a witness whom he had called. A hearsay rule that made no exception for testimony about the same witness's declarations against his penal interest excluded the person's out-of-court statements that incriminated him. The Court found, "The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability."[19] "That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."[20]

The Court has emphasized the limited nature of *Chambers*.

> *Chambers* specifically confined its holding to the "facts and circumstances" presented in that case; we thus stressed that the ruling did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." *Id.*, at 302–303. *Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or

federal rule excludes favorable evidence.[21]

The latest Supreme Court decision that a state rule of evidence denied due process, *Rock v. Arkansas*, concerned a rule that hypnotically refreshed testimony of witnesses was inadmissible *per se*.[22] The trial court applied the rule to exclude the defendant's own testimony about the shooting of the victim, which she said was accidental. This had a significant adverse effect on her ability to testify, virtually preventing her from describing any of the events that occurred on the day of the shooting, despite corroboration of many of those events by other witnesses, and even more importantly, keeping her from describing the actual shooting.[23] The Court held:

> A State's legitimate interest in barring unreliable evidence does not extend to *per se* exclusions that may be reliable in an individual case. Wholesale inadmissibility of a defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections. The State would be well within its powers if it established guidelines to aid trial courts in the evaluation of posthypnosis testimony and it may be able to show that testimony in a particular case is so unreliable that exclusion is justified. But it has not shown that hypnotically enhanced testimony is always so untrust-

---

a mental state which is an element of an offense" was an evidentiary rule that did not deny due process, four justices holding that it was an evidentiary rule that did deny due process, and one justice holding that it did not deny due process because it was not an evidentiary rule).

**18.** 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

**19.** *Id.* at 300, 93 S.Ct. 1038.

**20.** *Id.* at 302, 93 S.Ct. 1038.

**21.** *Scheffer*, 523 U.S. at 316, 118 S.Ct. 1261.

**22.** 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

**23.** *Id.* at 57, 107 S.Ct. 2704.

worthy and so immune to the traditional means of evaluating credibility that it should disable a defendant from presenting her version of the events for which she is on trial.[24]

■ These cases show that the exclusion of relevant, material, important evidence by the application of particular rules that are arbitrary or disproportionate to their purposes may offend the Constitution. They also show that courts are free to apply evidentiary rules that are not arbitrary and unjustified.

### 2. Lower Court Decisions

■ Our harmless-error rules are substantially the same as those of the federal courts. "Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error … is categorically immune to a harmless error analysis."[25] To non-structural errors of constitutional dimension, we apply the harmless-error standard that is required by the Supreme Court.[26] To other errors we apply a standard that is substantially the same as that in a federal statute and rule.[27] It is helpful, therefore, to look to the decisions of federal courts on the issue of whether the exclusion of defense evidence is constitutional error.[28]

The digests contain a profusion of decisions in which federal courts have dealt with the issue of harmless error in the exclusion of defense evidence without applying the test for constitutional error.[29] The cases come from the Supreme Court of the United States[30] and the courts of appeals in every circuit.[31]

---

**24.** *Id.* at 61, 107 S.Ct. 2704.

**25.** *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Cr. App.1997) (footnote omitted).

**26.** *Compare* Tex.R.App. Pro. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment") *with Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

**27.** *Compare* Tex.R.App. Pro. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"), *with* 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties") *and* Fed. R.Crim. Pro. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded").

**28.** *See Morales v. State*, 32 S.W.3d 862, 867 (Tex.Cr.App.2000) (looking to *Kotteakos v.*

*United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in evaluating harm from erroneous exclusion of defendant's evidence) *Cf. Bodin v. State*, 807 S.W.2d 313, 317 (Tex. Cr.App.1991) ("Generally, the Texas Rules of Criminal Evidence were patterned after the Federal Rules of Evidence. Cases interpreting federal rules should be construed for guidance with regard to Texas Evidence Rules, unless the Texas rule clearly departs from its federal counterpart").

**29.** See the various editions of West's Federal Practice Digest, *Criminal Law* key number 1170.

**30.** *See Hamling v. United States*, 418 U.S. 87, 108–10, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (specifically referring to nonconstitutional standard).

**31.** *See, e.g.:*

D.C.Cir.: *United States v. Clark*, 337 U.S.App. D.C. 278, 184 F.3d 858, 869 (1999) (citing case establishing standard for non-constitutional error);

1st Cir.: *United States v. Legarda*, 17 F.3d 496, 498–99 (citing *Kotteakos* and Fed. R.Crim.P. 52(a) for review of erroneous exclusion of hearsay; "defendant was allowed to put on a defense, even if not quite so

The holdings of these cases may be summarized thus: Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense.[32] "[N]ot every hearsay error amounts to a constitutional violation. At a minimum, a defendant must demonstrate that the excluded evidence was important to his defense."[33]

The federal courts of appeals that have asked whether the exclusion of evidence amounts to a constitutional violation have phrased the issue in different ways. One court has held that a trial court's exclusion of evidence must effectively prevent a defendant from advancing his defensive theory before rising to the level of a due-process violation.[34] In a case dealing with the exclusion of self-defense evidence, another court held that a state trial court's erroneous exclusion of a defendant's evidence of her state of mind at the time of the killing amounted to constitutional error

complete a defense as he might reasonably have desired"), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994);

2d Cir.: *United States v. Lawal*, 736 F.2d 5, 9–10 (1984) (applying authorities for non-constitutional error to erroneous exclusion of hearsay);

3d Cir.: *United States v. Asher*, 854 F.2d 1483, 1498–1500 (3d Cir.1988) (making "non-constitutional 'harmless error' determination" for erroneous exclusion of hearsay), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989);

4th Cir.: *United States v. Jones*, 976 F.2d 176, 184–85 (1992) (citing *Kotteakos* as authority for holding erroneous exclusion of hearsay was harmless), *cert. denied*, 508 U.S. 914, 113 S.Ct. 2351, 124 L.Ed.2d 260 (1993);

5th Cir.: *United States v. Barnett*, 945 F.2d 1296, 1301 n. 3 (1991) (holding erroneous exclusion of hearsay did not deny defendant a substantial right), *cert. denied*, 503 U.S. 941, 112 S.Ct. 1487, 117 L.Ed.2d 628 (1992); *United States v. Webster*, 750 F.2d 307, 330–31 (1984) (noting that court has in the past used both constitutional and non-constitutional standards, court held exclusion of hearsay to be harmless error), *cert. denied*, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985);

6th Cir.: *United States v. Branham*, 97 F.3d 835 (1996) (holding erroneous exclusion of hearsay harmless under FED.R.CRIM.P. 52(a));

7th Cir.: *United States v. Norwood*, 798 F.2d 1094, 1096–98 (applying FED.R.EVID. 103(a) and FED.R.CRIM.P. 52(a) to hold harmless the erroneous exclusion of hearsay), *cert. denied*, 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 711 (1986);

8th Cir.: *United States v. Rouse*, 111 F.3d 561, 570–72 (applying 28 U.S.C. § 2111 to hold harmless the erroneous exclusion of expert testimony), *cert. denied*, 522 U.S. 905, 118 S.Ct. 261, 139 L.Ed.2d 188 (1997);

9th Cir.: *United States v. Lopez–Alvarez*, 970 F.2d 583 ("Because the court's erroneous ruling [excluding hearsay] did not violate the defendant's constitutional rights, we do not test the error against the stringent 'beyond a reasonable doubt' harmless error standard ... but rather against the more lenient standard of FED.R.CRIM.P. 52(a)"), *cert. denied*, 506 U.S. 989, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992);

10th Cir.: *United States v. Mitchell*, 113 F.3d 1528, 1531–32 (1997) (erroneous exclusion of impeachment evidence harmless under standard for nonconstitutional error), *cert. denied*, 522 U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 665 (1998);

11th Cir.: *United States v. Cameron*, 907 F.2d 1051, 1059–60 (1990) (exclusion of evidence of insanity was harmless error, citing FED.R.EVID. 103).

32. *See Agard v. Portuondo*, 117 F.3d 696, 705 (2d Cir.1997).

33. *Lopez–Alvarez*, 970 F.2d at 588. *Cf. United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.) ("A violation of the hearsay rule does not automatically equate to a constitutional violation of the Sixth Amendment"), *cert. denied*, 502 U.S. 884, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991).

34. *United States v. Brown*, 785 F.2d 587, 590 (7th Cir.1986) ("[In *Chambers*], the result of the trial court evidentiary ruling was much more severe, resulting in a defendant's total inability to present a theory of defense, a deprivation much more far-sweeping and hindering than the situation found in the case at bar.") (internal citation omitted).

because the evidence was critical to her defense:

> [T]he trial court's exclusion of [the defendant's self-defense evidence] was not mere evidentiary error. It was of constitutional dimension. The ruling went to the heart of the defense. Petitioner's sole defense was that she killed her husband in an honest belief that she needed to do so to save her life. The success of the defense depended almost entirely on the jury's believing petitioner's testimony about her state of mind at the time of the shooting.... The trial court precluded petitioner from testifying fully about her state of mind and from presenting evidence that would have corroborated her testimony. Because this evidence was critical to her ability to defend against the charge, we hold that the exclusion of this evidence violated petitioner's clearly established constitutional right to due process of law—the right to present a valid defense as established by the Supreme Court in *Chambers* and *Washington.*[35]

These cases comport with the standard set by the Supreme Court's decisions. It is a standard that the errors in this case do not meet.

Other federal courts of appeals have used a test that focuses on harm. One such court said:

> Specifically, "whether the exclusion of (witnesses') testimony violated (defendant's) right to present a defense depends upon whether 'the omitted evidence (evaluated in the context of the entire record) creates a reasonable doubt that did not otherwise exist.'" *Justice v. Hoke,* 90 F.3d 43, 47 (2d Cir. 1996) (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). In a close case, "additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Agurs,* 427 U.S. at 112, 96 S.Ct. 2392; *Hoke,* 90 F.3d at 47 (same).[36]

Another court similarly focuses on the excluded evidence's "ultimate impact" on the jury's decision.[37] This standard also may have support in the Supreme Court's decisions.[38] But the excluded evidence in this case does not meet such a standard, either.

---

**35.** *DePetris v. Kuykendall,* 239 F.3d 1057, 1062–63 (9th Cir.2001).

**36.** *Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir.2000). *Accord Washington v. Schriver,* 240 F.3d 101, 111 (2d Cir.2001).

**37.** *See Ferreira v. Fair,* 732 F.2d 245, 248 (1st Cir.1984) ("Even assuming for present purposes that the trial court's evidentiary ruling was erroneous, we do not think that the 'ultimate impact' of the ruling amounted to a deprivation of due process. *See Chambers v. Mississippi,* 410 U.S. 284, 298, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).") (citing *Commonwealth v. Ferreira,* 381 Mass. 306, 409 N.E.2d 188, 193 n. 10 (1980) ("A determination that there may have been error in the limitation of evidence does not mandate a conclusion that *the defendant* was denied due process of law or that such error is constitutional. To determine whether such error is of constitutional dimension, the excluded or limited evidence must be considered in light of the effect of the exclusion or limitation on the jury."))

**38.** *See Richmond v. Embry,* 122 F.3d 866, 872 n. 5 (10th Cir.1997) ("[W]e are faced here with a compulsory process, rather than a confrontation clause challenge. In such a context, the Supreme Court has dictated a 'materiality,' or outcome-driven, test"), *cert. denied,* 522 U.S. 1122, 118 S.Ct. 1065, 140 L.Ed.2d 126 (1998). *Compare Turpin v. Kassulke,* 26 F.3d 1392, 1396 (6th Cir.1994) ("The Supreme Court looks to several factors in determining whether a defendant's due process rights require the admission of a particular item of evidence. First, the Court considers the extent to which the proffered evidence is 'critical' in the context of the case. Second, the Court considers the extent to which the proffered evidence 'tends to exculpate' the accused. Finally, the Court determines

## C. Application of Due–Process Standard

 Did the erroneous rulings in this case have such a drastic effect as those in *Ferguson* (denial of defendant's right to testify under oath and with the assistance of counsel), *Washington* (denial of right to present vital evidence of a co-defendant), *Chambers* (denial of right to present vital, reliable hearsay evidence, combined with denial of right to cross-examine), or *Rock* (denial of the defendant's right to testify to vital evidence about the offense)? Those defendants were effectively precluded from presenting a defense at all. We hold that the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.

### 1. What Was Admitted

The appellant in this case was able to present his defense of self defense. He testified that two months before the shooting the victim robbed him, in the process of which the victim pistol-whipped him, kicked him, and attempted to shoot him. A police officer testified that he was called to the scene at that time and saw the appellant with a bruised and swollen face, and heard the appellant report being robbed and pistol-whipped and kicked by the victim.

The appellant testified that everybody was scared of the victim because he would beat up on everybody, that he had seen the victim beat up two or three people, and that he had heard about others. He testi-

fied that he had been staying at a hotel the night before he shot the victim because he was afraid of him and because he had been receiving death threats. The appellant told the jury that when he encountered the victim that day, the victim cursed at him, told him he was going to kill him, and started approaching him while reaching into his pants where the appellant thought there was a gun. At this point the appellant shot him.

A witness named Rosie Carmouche testified that she was the victim's niece and that she had dated the appellant. She heard the victim tell the appellant he would fight the appellant if the appellant mistreated her, and she saw the victim strike the appellant. She "guessed" the victim beat up the appellant, and she could tell that the appellant got a pretty good whipping. The victim also was mad at the appellant because the appellant wanted to sell crack cocaine out of her grandmother's yard.

The appellant's neighbor, Gwendolyn Marie Edwards Nevels, was permitted to testify that the victim had come by the appellant's house that day.

### 2. What Was Erroneously Excluded

The appellant was not permitted to testify that on the day of the shooting "the whole neighborhood" told him that the victim had come looking for him. Specifically his neighbor, Jeanette or Ms. Jen, told him that the victim had been looking for him and she had heard that the victim was trying to kill him. The appellant was not permitted to testify that before the victim

whether the proffered evidence bears 'persuasive assurances of trustworthiness[.]' ") (internal citations omitted) *with id.* at 1404 ("Whether the [excluded evidence] pertained to critical issues is not quite the question here. Instead, we must determine whether the [evidence] is critical to the jury's task of

ascertaining the truth. The majority's interpretation has the effect of writing the *Chambers* criticalness inquiry off the books: asking whether the statement 'pertained to critical issues' at trial essentially reduces the inquiry into a type of relevancy requirement.") (Feikens, J., dissenting).

robbed him two months previously, a friend named Pat told him that he would be robbed. He was not allowed to testify about what the victim and his accomplices said during that robbery.

A neighbor, Ms. Nevels, was not permitted to testify about rumors that she had heard that some guy named "Wolf" (the victim's nickname) was looking for the appellant and wanted his money and was out to hurt him.[39] She was not permitted to testify that she told the appellant "to be careful because they said that the guy that was at your door was looking for you, Wolf."

█ It may be seen that the erroneously excluded evidence was relevant to the defense of self-defense, but that their exclusion did not prevent the appellant from presenting a defense. For this reason, the error was not of constitutional dimension. Exclusions of evidence are unconstitutional only if they "significantly undermine fundamental elements of the accused's defense."[40] "That [the defendant] was unable to ... present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury."[41]

The case before us is not an example of a rule placing an arbitrary or unjustified limitation on an accused's right to defend. It is a misinterpretation of a rule, the prohibition against hearsay, that is a valid limitation on a defendant's evidence when it is correctly applied. Whether such a misinterpretation could deny due process if it infringed on an interest of a defendant so heavily as to deny the right to defend, is a question that we shall not have to answer today.

We hold that the erroneous exclusion of evidence in this case did not amount to a denial of due process or other constitutional right.

Strictly speaking, the specific rule that applies to this error in admitting evidence is Rule of Evidence 103(a): "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." But the standard of review under that rule is the same as that under Rule of Appellate Procedure 44.2(b).[42] The Court of Appeals did not err by using the standard in Rule of Appellate Procedure 44.2(b) in its harmless-error determination.

The judgment of the Court of Appeals is affirmed.

PRICE and JOHNSON, JJ., concurred in the judgment.

HOLCOMB, J., dissented.

---

**39.** Whether this witness is the person that the appellant called "Jeanette" or "Ms. Jen" is not clear.

**40.** *United States v. Scheffer*, 523 U.S. 303, 315, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

**41.** *United States v. Willie*, 941 F.2d 1384, 1398–99 (10th Cir.1991) (finding harmless the exclusion of hearsay materials offered to show the defendant's state of mind), *cert. denied*, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992).

**42.** *See Advisory Committee Notes, 1972 Proposed Rules*, FED.R.EVID. 103(a) ("The rule does not purport to change the law with respect to harmless error. See ... F.R.Crim. P. 52, and decisions construing [it]"); *Notes and Comments*, TEX.R.APP. PRO. 44 ("Paragraph 44.2(b) is new and is taken from Federal Rule of Criminal Procedure 52(a) without substantive change").