

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00430-CR**
**NO. 02-11-00431-CR**

ARTURO ARMIJO                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Arturo Armijo was charged in trial court cause number 1224172D (02-11-00430-CR) with felony driving while intoxicated (DWI) and in trial court cause number 1224396D (02-11-00431-CR) with possession of less than one gram of cocaine. The felony DWI was enhanced with a habitual offender notice. The possession of cocaine charge was enhanced from a state

---

[1]*See* Tex. R. App. P. 47.4.

jail felony to a second-degree felony.  The cases were tried jointly before a jury, which convicted Appellant of both offenses, and, finding the enhancement allegations to be true, assessed his punishment at thirty years' confinement in the felony DWI case and at five years' confinement in the possession of cocaine case, with the sentences to be served concurrently.  The trial court sentenced Appellant accordingly in each case.

Appellant brings a single point on appeal, complaining that the trial court reversibly erred by admitting evidence of retrograde extrapolation in the felony DWI case and that the error in the DWI case tainted the jury verdict in the cocaine case, number 1224396D.  Because we hold that the trial court did not reversibly err, and because Appellant cites us to no law or argument to support his complaint that error in the DWI case created reversible error in the cocaine case, we affirm the trial court's judgments.

Officer Jamie Fagan, a City of Fort Worth police officer, was working the third shift on December 19, 2010, on East Lancaster.  She observed a small pickup approaching her that was driving the wrong way on East Lancaster. Officer Fagan stopped the pickup.  Appellant was its driver.  Officer Fagan testified that Appellant's speech was slurred, he smelled of alcohol, and he was unsteady on his feet.  Although Appellant could speak English, Officer Fagan summoned Officer Gilbert Lara to the scene to speak with Appellant in Spanish. Officer Fagan testified that, inside the pickup, she saw three empty Coors beer cans and another can of Coors beer that was approximately half-full.

Officer Lara performed a horizontal-gaze-nystagmus test, but Appellant refused to participate in the one-leg stand and walk-and-turn field sobriety tests. He explained to the officer that he could not perform those tests because of the injuries he had received in the Vietnam War. At trial, both Officer Lara and Officer Fagan offered the opinion that Appellant had been intoxicated at the time of his arrest.

Appellant's blood test, administered about four hours after his arrest, showed his blood alcohol concentration (BAC) to be .20.

While he was being booked into the jail, Appellant was discovered to have a small baggie of white powder in his wallet. When the powder was tested, it was found to be .05 grams of cocaine.

At trial, Dr. Robert Johnson, chief toxicologist for the Tarrant County Medical Examiner's office, offered his opinions regarding Appellant's BAC at the time of his arrest, based on retrograde extrapolation and upon the fact that Appellant's BAC reading was not obtained until some four hours after his arrest. Dr. Johnson admitted that he did not have sufficient facts upon which to base an opinion with reasonable scientific certainty. Specifically, on voir dire, Dr. Johnson testified to the factors that go into retrograde extrapolation. He testified as follows:

> You need the height and weight of the person that we're talking about. We'd like to know the time of the last drink, so we would be able to tell if all the ethanol is absorbed, and we'd like to know the time of the last meal, so we could get an idea if there was

3

any food in the stomach that would have delayed absorption of that last drink.

. . . .

If the last drink was completely absorbed, a retrograde extrapolation can be done fairly accurately. Because elimination is a linear function and you just add the number of hours times that elimination rate to the original result. Without that knowledge, if the last—or if there is unabsorbed alcohol in the stomach, it makes it very difficult to follow that extrapolation lying down, because you don't know how much was in the stomach at the time of the incident.

. . . .

If there is food in the stomach, that absorption is slowed. So it affects—while it affects the rate of the absorption and it increases the likelihood that there was unabsorbed alcohol in the stomach, which makes that estimate of alcohol concentration more difficult.

. . . .

If you're still absorbing alcohol, you're on that upper portion of—you're still increasing in alcohol concentration, so it makes picking a time on the decreasing side of that curve more difficult[. I]t can be impossible.

If you are purely eliminating ethanol, everything's been absorbed, you're on the linear function on the backside, on the decreasing side of the curve, it is mathematically valid to estimate an alcohol concentration at a previous time.

. . . .

We can—we do it three ways. We use the average and we will present that generally. If someone is a habitual drinker, they eliminate ethanol faster, so we can do a faster rate of elimination in that case.

If someone's a naive drinker, they eliminate alcohol slower, so we can use a lower elimination rate in that case. I used the average today.

. . . .

4

The range is .01 on the naive drinker side to .025 on the habitual drinker side. So it's more than double, the rate would be more than double for a—what we consider an alcoholic.

Dr. Johnson testified that he did not measure or weigh Appellant but was provided a height of 5'7" and a weight of 180 pounds. Dr. Johnson admitted that, because he was missing several of the necessary factors, his estimates concerning Appellant's BAC at the time of his arrest could be different from the actual BAC. He also said that the fact that the blood test was completed four hours after the stop made it easier to get a number, because within the first hour, all ethanol is absorbed. The remaining three hours would be on the linear backside of the curve, so he could be fairly confident that only elimination was taking place. But Dr. Johnson admitted that there were many unknowns.

Nevertheless, he testified before the jury that people start losing the use of their mental or physical faculties at .03 or .04:

> The drinking while in the car makes it very difficult, because we don't know how much was left unabsorbed in the stomach at the time of the stop. The . . . fact that it's four hours between the stop and the time of the test, that helps a little bit, because all of the ethanol that would have been consumed prior to the stop would have been absorbed within the first hour after the stop. So that leaves us basically from 3:00 a.m. to 6:15. So about three hours of only elimination and no absorption of additional alcohol.
>
> So if we added three hours worth of elimination to the .2, it would have been about—on average, about point .24, maybe. That's an estimate.

Only at that point did Appellant take Dr. Johnson on voir dire and then lodge his objections to the testimony. But the question posited to Dr. Johnson

5

when he offered that testimony was, "Are you able to come to a result based on that set of facts?" The question called for a "yes" or "no" answer, not for his conclusion.

Appellant contends that the trial court abused its discretion by admitting the retrograde extrapolation evidence. The State asks us to hold that Appellant did not preserve this issue for appellate review. Appellant concedes that Dr. Johnson had testified before the jury concerning his credentials and had begun to offer opinions regarding Appellant's BAC at the time of his arrest. Because the BAC test was not completed until approximately four hours after Appellant's arrest, Dr. Johnson's testimony necessarily involved retrograde extrapolation. Appellant requested a hearing outside the presence of the jury, and after the hearing, Appellant contended that Dr. Johnson did not have sufficient facts upon which to base an opinion with reasonable scientific certainty. Dr. Johnson conceded that critical factors that he himself had described as necessary for an accurate retrograde extrapolation conclusion were not known. Appellant objected to Dr. Johnson's testimony regarding Appellant's probable BAC at the time of his arrest, but the trial court disagreed with Appellant's position and permitted Dr. Johnson to testify to the probable BAC before the jury. We hold that Appellant sufficiently preserved his complaint by objecting to the testimony regarding retrograde extrapolation and receiving an unfavorable ruling.

After Appellant's objection was overruled, the State reminded Dr. Johnson that he had testified that "the person who was driving that car's [BAC] can be as

6

high as .024 . . . ." Dr. Johnson responded that that was a rough estimate but that he felt pretty confident that the BAC would be higher than .2.

The Texas Court of Criminal Appeals has held that evidence of retrograde extrapolation is not admissible unless significant underlying facts are present rendering the opinion evidence reliable.[2] But the erroneous admission of such evidence does not typically constitute constitutional error.[3] Consequently, under rule of appellate procedure 44.2(b), the erroneous admission of such evidence is not reversible if it had no more than a slight effect on the jury's verdict.[4]

The Texas Court of Criminal Appeals explained in *Bagheri v. State* that in determining whether there was harm from nonconstitutional error,

> [t]he question is not whether there was sufficient evidence to support the verdict. Instead, the reviewing court should consider the entire record when making this determination, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire if applicable. Important factors are "the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." More specifically, the reviewing court should consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert.[5]

---

[2]*Mata v. State*, 46 S.W.3d 902, 908, 916–17 (Tex. Crim. App. 2001).

[3]*Bagheri v. State*, 119 S.W.3d 755, 762–63 (Tex. Crim. App. 2003) (citing *Potier v. State*, 68 S.W.3d 657, 662–63 (Tex. Crim. App. 2002)).

[4]*Id.* at 763; *see* Tex. R. App. P. 44.2(b).

[5]*Bagheri*, 119 S.W.3d at 763 (citations omitted).

Taking Dr. Johnson at his word that he did not have enough information to perform retrograde extrapolation that was sufficiently reliable to determine accurately Appellant's BAC at the time of his arrest, we examine the record to determine whether erroneous admission of the retrograde extrapolation testimony substantially affected Appellant's rights so that it had more than a slight effect on the jury's verdict.[6] The felony DWI indictment alleged merely that Appellant operated a motor vehicle in a public place while intoxicated, without stating the manner or means of intoxication. The State was free, then, to prove either per se intoxication or lack of normal use.[7] The police found beer containers in Appellant's pickup. His BAC reflected in the blood draw was .20. The police saw him driving in the wrong direction against oncoming traffic.

Specifically, Officer Fagan testified that she first saw Appellant's pickup while she was driving eastbound on Lancaster in Fort Worth. She saw headlights coming toward her in the same lane. She testified that there were three eastbound lanes and three westbound lanes. The eastbound lanes and westbound lanes were separated by a large median with trees. She was concerned about the safety of the public because the pickup was traveling on the wrong side of the median, which meant that it was traveling westbound in the lanes on the eastbound side of the median. After she stopped Appellant, she

---

[6]*See id.* at 762–63; *see also* Tex. R. App. P. 44.2(b).

[7]*See Bagheri*, 119 S.W.3d at 762.

8

spoke with him and realized that his speech was slurred and that he appeared intoxicated. The officers smelled the odor of alcoholic beverage and testified that Appellant's eyes were bloodshot and watery. They also observed that Appellant was swaying and that his balance was unsteady after he got out of the truck. The evidence of intoxication, if believed, was overwhelming, even without evidence of retrograde extrapolation.

The officers also found a baggie of cocaine in Appellant's pocket.

We therefore hold that the erroneous admission of the retrograde extrapolation testimony did not affect Appellant's substantial rights to a fair trial or substantially affect or in any way undermine confidence in the jury's verdict in the felony DWI case and was therefore harmless. We further hold that the improper admission of the retrograde extrapolation testimony likewise had no effect on the cocaine case, and therefore likewise caused no harm in that case.

We, therefore, overrule Appellant's sole point and affirm the trial court's judgments.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

GABRIEL, J., filed a concurring opinion in which LIVINGSTON, C.J., joins.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 1, 2013

9