In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00197-CR**
_____

**MICHAEL WAYNE KELLY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-10-12451-CR**

**MEMORANDUM OPINION**

Following a jury trial, which resulted in his conviction for continuous sexual abuse of children, Michael Wayne Kelly appealed.[1] On appeal, Kelly argues that various rulings by the trial court excluding evidence he wanted to develop on cross-examination violated his constitutional right to confront the witnesses who testified against him. But the record does not show the rulings Kelly challenges significantly

---

[1]Tex. Penal Code Ann. § 21.02.

1

undermined his ability to develop evidence supporting his theory that the witnesses who testified were lying about what they said he did.[2] Because the trial court did not violate Kelly's rights under the Sixth Amendment by excluding the evidence he complains about in his brief, we will affirm.

## Background

To simplify the opinion, we limit our discussion of the evidence to the parts we need to explain our resolution of the arguments Kelly included in his brief. The testimony in the trial shows *Selena* and *Kendall* are Kelly's daughters.[3] Sam is Selena's mother. Kristen is Kendall's mom. Selena and Kendall are the children the State charged Kelly with molesting.

In Kelly's sole issue, he argues the trial court excluded evidence he should have been allowed to develop to prove that Kristen, Sam, Selena, and Kendall had motives or biases to testify against him in his trial. According to Kelly, the restrictions the trial court placed on his attorney kept his attorney from proving Kristen, Sam, Selena, and Kendall had motives that led them to lie about what they claimed he had done to molest Selena and Kendall when he cared for each child.

---

[2]U.S. CONST. amend. VI.

[3]To protect the privacy of the children and their respective families, we have not identified the children or their mothers by using their real names. Instead, we will use *Selena* as a pseudonym for Kelly's oldest daughter; *Sam* as a pseudonym for Selena's mother; *Kendall* as a pseudonym for Kelly's youngest daughter; and *Kristen* as a pseudonym for Kendall's mother.

2

Kelly supports his brief with four basic arguments. First, he argues that, had he been allowed to conduct more thorough cross-examinations, he could have developed more evidence than he did to prove what the witnesses said about what he did to Selena and Kendall was not true. Second, he argues that by conducting more thorough examinations, he could have shown that in January 2014, Kendall acquired knowledge about sex, including the acts she attributed to him, from several children touching her in places on her body that he contends would have informed her knowledge about sex. Third, Kelly claims that had he been allowed to prove Kendall first experienced sexual contacts with these children, he could have shown Kendall lied to her mother when, in October 2014, she told her mother no one had ever touched her private parts. Fourth, Kelly argues that had he been allowed to develop evidence about the conduct between Kendall and the children, he could have shown the types of acts she engaged in with them were much like those Kendall, several months later, attributed to him.

Shortly before the State called its first witness, Kelly explained he wanted to introduce evidence about the sexually related encounters between Kendall and the children she was living with in January 2014 to develop testimony about what happened in those encounters given what Kelly described about them to a school counselor shortly after the encounters occurred. The prosecutor responded that Kelly's summary of what the counselor described failed to describe sexually related

3

conduct that resembled the acts Kendall attributed to him. After considering the arguments and reviewing the counselor's report, the trial court ruled Kelly's attorney could "not [] go into any allegations of [Kendall's] prior sexual abuse or sexual conduct . . . at this time."

When Kelly's attorney later tried to develop evidence when questioning witnesses about the encounters Kendall experienced with the children she was living with in January 2014, the trial court sustained the State's objections. The trial court also sustained the State's objections to questions Kelly's attorney tried to ask Selena to develop what Kendall told Selena about what the children she was living with did to her in the encounters that occurred in January 2014.

Standard of Review

Under the Rules of Evidence, "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and [the error was properly preserved under the rules of error preservation for appeal]."[4] But rulings excluding "evidence are unconstitutional only if they 'significantly undermine fundamental elements of the accused's defense.'"[5] Thus, to prevail on his Confrontation Clause claim when the complaints address whether the trial court unduly restricted the scope of a defendant's cross-examination, we must decide (1)

---

[4]Tex. R. Evid. 103(a).
[5]*Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (quoting *U.S. v. Scheffer*, 523 U.S. 303, 315 (1998)).

4

whether the trial court erred by excluding the evidence, and (2) whether the trial court significantly undermined the defendant's right to present his defense given all the evidence admitted in the trial.[6]

Analysis

Kelly argues that by restricting his rights to conduct the cross he wanted, the trial court significantly undermined the ability his attorney would have otherwise enjoyed in proving that Selena and Kendall "had a motive and bias to make false allegations against [him.]" For five reasons, we disagree.

First, the record shows the trial court allowed Kelly to prove that Selena and Kendall each wanted Kendall to live with Kristen during and following the child custody battle that had erupted involving Kendall's parents. When Kelly's attorney cross-examined the witnesses who testified in Kelly's trial, he established the allegations against Kelly first came up in the context of a recently filed child custody case between Kendall's parents. For example, while cross-examining Kendall, Kelly's attorney developed that when Kendall was interviewed in October 2014 by a forensic interviewer, Kristen told Kendall "the things that [she] needed to remember to say[.]" The trial court also allowed Kelly's attorney to cross-examine witnesses about whether Selena had lied. On cross, Kelly's attorney proved that when Selena was first interviewed in November 2019 about claims of sexual abuse,

[6]*Scheffer*, 523 U.S. at 315; *Potier*, 68 S.W.3d at 666.

she told the interviewer Kelly had never abused anyone. In Selena's second interview, which occurred in July 2016, Selena testified that what she told the forensic interviewer during her first interview was a lie.[7] While on cross, Kelly's attorney asked Selena to explain why she changed her account about what she claimed Kelly had done. Selena testified she changed what she said because she had feelings of guilt about her failure to protect Kendall given her role as Kendall's big sister. We conclude this evidence reflects the trial court did not prevent Kelly from developing evidence to support his claims the witnesses had a motive to testify against him in his trial.

Second, the record shows that Kelly called a neuropsychologist as an expert witness. During his testimony, the expert explained why the incidence of false claims of abuse increase when the claims arise against the backdrop of an impending suit over the parent's custodial rights. The neuropsychologist testified: "[A] sexual abuse allegation in a child custody case is the back door to winning the case." And he testified, in cases where the dispute involves custody, the incidence of false claims of sexual abuse soar to around fifty percent due to the risk that the child's outcry originated with the parent, not the child. Kelly's expert explained that families that are dysfunctional manipulate others to achieve their goals. He said "dysfunctional

---

[7]In the first interview, which occurred in November 2014, Selena explained that she said Kelly "did nothing to [her] and that he was a good guy."

famil[ies are] destructive and use destructive methodologies to achieve their evil intentions." Kelly then linked the expert's testimony to other testimony he developed through his cross to show that Selena and Kendall both were raised by mothers presiding over dysfunctional homes. Kelly's expert explained that dysfunctional family dynamics increase the rate of false allegations. According to the neuropsychologist, when the child is a teenager, (which the evidence revealed was true in Selena's case when the claims arose), the risk of false allegations increase. The expert also testified that the risk of false claims increases when children are required to undergo multiple interviews (like Selena) when there are allegations that someone has been sexually abused. Thus, Kelly did develop evidence to support his claims of bias.

Third, the questions Kelly's attorney asked when he cross-examined the witnesses demonstrate he developed testimony to show Selena and Kristen were raised in homes by mothers who created a great deal of dysfunction within their respective homes. For example, on cross, Sam testified she has six children, uses drugs, and is an alcoholic. Sam explained that until 2012, she was employed by a sexually oriented business. Kelly also established information on cross-examining witnesses that shows Kristen also had used various illegal drugs that impaired her memory. Kristen explained that at age fifteen, she was hospitalized and treated for drug abuse. And while Kristen was living with her boyfriend, she was aware that

people were using drugs in the home. Kristen also described the circumstances that led to her seeing an attorney so she could obtain court-ordered custody rights to keep Kendall. Kristen agreed that Kelly had alleged she has mental health issues and uses drugs in the case he filed, which he hoped would lead to establishing his right to keep Kendall. And Kristen explained that in a custody battle she had with another man over another child, that the case ended when her boyfriend was awarded custody. This testimony shows the trial court did allow Kelly's attorney to develop evidence to support his defense.

Fourth, the trial court did not abuse its discretion by finding the evidence Kelly's attorney wanted to develop concerning the alleged sexually related encounters between Kendall and some children was not relevant. The record shows the types of acts involved in Kendall's encounters with the children are not like the ones she attributed to him. And even if the acts had some relevance, introducing evidence that would reveal a sexual-assault victim's prior sexual conduct is generally inadmissible.[8] While it's true that Rule 412 making such evidence generally inadmissible is not a rule that has no exceptions, including one that makes such evidence relevant if it tends to show "the victim's motive or bias[,]" we are not persuaded the trial court abused its discretion when it refused to apply the exception

---

[8]Tex. R. Evid. 412(a)(2) (making specific instances of a victim's past sexual behavior generally inadmissible in criminal trials).

8

to the evidence Kelly wanted to develop during his trial.[9] As to relevance, the record does not show there is any similarity between the sexual acts Kendall described to a school counselor in January 2014 and those Kendall attributed to Kelly.[10] And even if Kendall's encounters with those children are relevant to show motive or bias, Rule 412 allows trial courts to exclude evidence regarding a victim's prior sexual behavior if admitting the evidence is unduly prejudicial to the issues the jury must decide in the trial.[11] We conclude the trial court did not abuse its discretion by excluding the evidence about Kendall's encounters with the children both because it was not relevant and because admitting it would have been unduly prejudicial.

Fifth, Kelly had the right to call—but did not—witnesses to express opinions about Selena's and Kendall's reputations for telling the truth. Calling reputation witnesses is the manner the Rules of Evidence allows parties to prove a witness is lying.[12] Even then, the parties may not ask reputation witnesses to testify about prior specific instances of conduct.[13] We conclude the trial court did prevent Kelly from developing evidence relevant to his defense that Selena's and Kendall's accusations against him were false.[14]

---

[9]*Id*. 412 (b)(2)(C).

[10]*See Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000).

[11]Tex. R. Evid. 412(b)(3).

[12]*Id.* 608(a).

[13]*Id*. 608(b).

[14]While the school counselor's report, which describes the types of conduct the children engaged in with Kendall, was never admitted into evidence in the trial,

To be sure, Kelly's rights under the Sixth Amendment include the right "to be confronted with the witnesses against him[.]"[15] The scope of that right is broad enough that it requires trial courts to allow defendants to cross-examine witnesses about matters that involve witness motive or bias.[16] Here, Kelly elected not to call any reputation witnesses in his trial. Additionally, the record demonstrates the trial court allowed Kelly to develop evidence showing that Kristen, Sam, Selena, and Kendall had reasons that might have led them to falsely accuse him of molesting Selena and Kendall in order to help Kristen win custody of Kendall.

Boiling it down, the record shows the trial court did not allow Kelly's attorney to cross-examine witnesses on matters that related to Kendall's sexual encounters with others that he wanted to ask the witnesses about during his trial. But the Sixth Amendment right to confront witnesses is not unqualified, so it does not require the trial court to permit the defendant to cross-examine witnesses in every way he may choose.[17] Instead, the question we must answer is whether the restrictions placed on

---

the trial court marked the report to include it in the record for the purpose of appellate review of the court's rulings excluding evidence about the encounters between Kendall and the children, encounters that occurred around January 2014.

[15]U.S. CONST. amend. VI.

[16]*See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

[17]*See Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (noting that trial courts may limit the scope and extent of cross-examination designed to reveal the witness's motive to testify falsely to a claim of molestation so long as those restrictions do not infringe on the Confrontation Clause's guarantee permitting the defendant an effective cross); Tex. R. Evid. 412 (making evidence of previous

Kelly's attorney kept Kelly from receiving "a fair opportunity to defend himself" in his trial.[18] We conclude the answer to that question is no. We come to that conclusion even though we recognize a witness's motivation to testify against someone is particularly important to the defendant's right to present evidence, given the factfinder role in deciding what evidence it should believe at trial.[19] Even so, trial courts retain "wide latitude to impose reasonable limits on such cross examination without violating the Confrontation Clause."[20] On this record, the trial court allowed Kelly to effectively cross-examine witnesses even though it created reasonable restrictions to enforce the Rules.[21]

Conclusion

We conclude Kelly has not established he was deprived of the right to effectively cross-examine the witnesses who testified against him at trial. For that reason, the trial court's judgment is

---

sexual conduct inadmissible in criminal cases that involve the prosecution of the defendant for sexual assault absent exceptions that do not apply to Kelly).

[18]*Scheffer*, 523 U.S. at 316.

[19]*See Tucker v. State*, 771 S.W.2d 523, 531 (Tex. Crim. App. 1988).

[20]*Id*. (citing *Delaware v. Van Arsdale*, 475 U.S. 673, 679 (1986)).

[21]*Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 12, 2021
Opinion Delivered July 14, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

12