**Affirmed as Modified and Memorandum Opinion filed December 12, 2023**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00670-CR

### JESUS A. DIAZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1625771**

## MEMORANDUM OPINION

Appellant Jesus Diaz appeals a judgment of conviction for indecency with a child. In two issues, appellant challenges the trial court's exclusion of witness testimony regarding his general character for truthfulness and the assessment of consolidated court costs. We agree that the trial court assessed a higher amount of costs than permitted by the applicable statute. Accordingly, we modify the judgment to eliminate the unauthorized costs and affirm the judgment as modified.

## *Background*

B.B., the complainant, was nineteen years old at the time of trial. Appellant and B.B.'s stepfather were close friends and coworkers. B.B. considered appellant as her "uncle." B.B. first began feeling uncomfortable around appellant when she was around twelve or thirteen years old. She was wearing a bikini at the pool and felt that appellant was staring too much. She did not mention this incident to her parents. When B.B. was fourteen years old, appellant texted her very late at night to join him outside in his car to hang out. She did not go outside. Not long after this incident, appellant began sending B.B. morning messages around the time that she was getting ready for school. Appellant sent these morning texts a few days in a row. B.B. attested that these messages made her feel kind of "weary and uncomfortable."

In September 2017, B.B. and her family were staying at appellant's one-bedroom apartment for the weekend. One evening, B.B., her family, and appellant were watching movies in the living room. After watching some movies, B.B.'s family went to sleep in the bedroom. B.B. and appellant, however, remained in the living room and continued watching movies. During the first movie, appellant started massaging B.B.'s feet. She felt "weird" and "kicked away from him." After some time passed, appellant began massaging B.B.'s feet again and began working his way up her leg. As appellant was approaching her thigh, B.B. moved away so that he would not go any higher. Appellant did not attempt to touch B.B. again during the remainder of the first movie.

B.B. and appellant began a second movie. She described this movie as a "teen romance" and explained that there was a "sexually physical" scene. During this scene, appellant started massaging B.B.'s legs and slowly worked his way to B.B.'s vaginal area. B.B. pretended to be asleep in hopes that appellant would stop. According to B.B., appellant tried to squeeze his hands into her underwear. After

2

being unsuccessful, he decided to go at a different angle. Appellant went through the top of her underwear and "wiggled his fingers through [her] pubic hair all the way down to the top of [her] lips" and touched her clitoris. B.B. squeezed her legs as tight as she could. When she squeezed her legs together, appellant "immediately stopped what he was doing." He slowly tried to wiggle his hand out "as if trying to pretend like he wasn't doing what he was doing." At some point, B.B. fell asleep. She woke up in a "fetal position" and described appellant as "grazing his fingers along [her] vagina outside of [her] shorts." The very next morning, B.B. went to school and told a school administrator what happened. The school administrator called B.B.'s mother, the Department of Child Protective Services, and the sheriff's office.

Appellant was indicted for indecency with a child. A jury found him guilty as charged in the indictment and assessed his punishment at 10 years in prison. The trial court suspended the sentence of confinement and placed appellant on community supervision for 7 years.

## *Discussion*

Appellant raises two issues on appeal. First, he argues that the trial court committed reversible error when it excluded witness testimony regarding his general character for truthfulness. Specifically, appellant insists that the State attacked his character for truthfulness during Sergeant Qingyu Li's testimony. Second, appellant contends that certain court costs should not have been assessed in his judgment. We address each of appellant's issues in turn.

### I.   Admissibility of Evidence

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard of review. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). A trial court abuses its discretion when it acts without reference to any

3

guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op on reh'g)).

Although relevant, character evidence is generally inadmissible. Tex R. Evid. 404(a); *Sims v. State*, 273 S.W.3d 291, 294 (Tex. Crim. App. 2008). However, an accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense when that character trait is pertinent to the offense. Tex. R. Evid. 404(a)(2)(A); *Valdez v. State*, 2 S.W.3d 518, 519 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). A pertinent trait is "one that relates to a trait involved in the offense charged or a defense raised." *Spector v. State*, 746 S.W.2d 946, 950 (Tex. App.—Austin 1988, pet. ref'd).

Appellant contends that Li's testimony implied that appellant was not truthful during appellant's interview at the Children's Assessment Center. Li testified that appellant acted like he did not know the purpose of the interview even though Li identified himself as an investigator with the Crimes Against Children Unit and mentioned B.B.'s and B.B.'s father's names.[1] According to appellant, his "character

---

[1] As mentioned, B.B.'s stepfather and appellant were close friends. B.B.'s stepfather referred to appellant as "Chewy." Prior to the interview, B.B.'s stepfather sent appellant a text message after he learned what B.B. disclosed to the school administrator. The text message stated:

> What the f..k did you do last night Chewy! [B.B.'s mother] just left the school because principal called her and said you were trying to touch [B.B.]!! Wtf in what god damn world do you think that's ok! She's like a daughter to you chewy that's my daughter! Wtf[.] Everything that she is going through and you want to do this sh.t! I don't know what to f..king say or do.

> According to B.B.'s stepfather, this text message was read on September 8, 2017, but

4

for truthfulness was made relevant to the offense by the State" when they used Li's testimony to attack appellant's credibility. Because appellant believed that the State attacked his character for truthfulness, he sought to admit the testimony of three witnesses to testify about his character for truthfulness. The trial court denied appellant's request but accepted appellant's offer of proof.

Even presuming without deciding that the trial court erred by excluding the witnesses' testimony regarding appellant's character for truthfulness, any error would have been harmless. Generally, an erroneous evidentiary ruling is nonconstitutional error and is reviewed as such. *Potier v. State*, 68 S.W.3d 657, 662–63 (Tex. Crim. App. 2002); *see also* Tex. R. App. P. 44.2(b) (providing that nonconstitutional error must be disregarded unless it affects a substantial right). However, "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665.

Reviewing the record, each of the three witnesses that appellant sought to have testify about his character for truthfulness gave their opinion on appellant's moral and safe relations with small children and young girls. *See Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. 2002) (providing that the accused in a sexual assault case was "entitled to proffer evidence of his good character (or propensity) for moral and safe relations with small children and young girls [] under Rule 404(a)(1)(A)."); *see also Valdez*, 2 S.W.3d at 519 (same). Thus, any benefit from additional testimony regarding appellant's character for truthfulness would have been minimal. Moreover, appellant's trial counsel was permitted to fully cross-examine Li, emphasize appellant's denials of inappropriate sexual contact with B.B, and

---

appellant never responded.

5

challenge B.B.'s allegations. Finally, the evidence supporting appellant's conviction was strong and did not rest solely on Li's testimony. B.B. testified how appellant's behavior escalated from staring too much to using his hands to touch her vagina; B.B.'s mother explained how the incident between B.B. and appellant impacted B.B.; the school administrator asserted that the day B.B. disclosed what appellant did to her, B.B. seemed very worried and upset; and B.B.'s stepfather testified that he was close friends with appellant for several years, but after the incident, he never heard from appellant again.

Because there is a fair assurance that the purported error did not influence the verdict or had only a slight effect, if any, we cannot say that appellant's substantial rights were affected by the error. We conclude that any purported error from the exclusion of the witnesses' testimony regarding appellant's character for truthfulness would have been harmless. *See* Tex. R. App. P. 44.2(b).

Accordingly, we overrule appellant's first issue.

## II. Court Costs

In his second issue, appellant argues that the trial court erred in assessing court costs not authorized by statute. Specifically, appellant maintains that the current version of section 133.102 of the Government Code applies only to an offense committed on or after January 1, 2020.[2] It is undisputed that appellant allegedly committed the offense in this case in 2017, which was prior to the effective date of the legislative change to section 133.102. *See* Act of May 23, 2019, 86th Leg., R.S.,

---

[2] The current version of section 133.102 of the Government Code is effective until December 31, 2023. The Legislature recently amended section 133.102 and that amendment will go into effect on January 1, 2024. *See* Act of May 18, 2023, 88th Leg., R.S., ch. 525, (H.B. 3186), § 14, eff. Jan. 1. 2024.

ch. 1352, § 1.03. The State concedes that the trial court should have only assessed $133 in consolidated court costs and does not object to reducing the amount of court costs assessed by $52.

Accordingly, we sustain appellant's second issue and modify the trial court's judgment to reflect a decrease of $52 in assessed court costs. *See Wiggins v. State*, 622 S.W.3d 556, 561 (Tex. App. —Houston [14th Dist.] 2021, pet. ref'd).

### *Conclusion*

We modify the trial court's judgment to reflect an assessment of $133 in consolidated court costs, which shall decrease the total costs by $52. We leave undisturbed the remainder of the trial court's judgment. We affirm the trial court's judgment as modified.

/s/ Frances Bourliot
Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).

7