# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00547-CR

---

**Marcos Landin, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-19-904017, HONORABLE CHANTAL ELDRIDGE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found Marcos Landin guilty of the second-degree felony offense of attempted aggravated sexual assault of a child as charged in Count 1; the third-degree felony offense of indecency with a child by exposure as charged in Count 2; the first-degree felony offense of aggravated sexual assault of a child as charged in Count 3; and the third-degree felony offense of indecency by sexual contact as charged in Count 4.  *See* Tex. Penal Code §§ 21.11(a)(1), (a)(2)(A), 22.021(a)(1)(A), (a)(2)(B).  The district court assessed punishment at five years' imprisonment on Counts 1 and 3 and two years' imprisonment on Counts 2 and 4 and rendered judgment on the verdict.  On appeal, Landin contends that the district court deprived him of his right to present a complete defense and abused its discretion by limiting some witnesses' testimony and by excluding certain mental-health records from evidence.  We will affirm the district court's judgments of conviction.

# BACKGROUND[1]

Child was born to Mother and Father in 2001. Mother separated from Father, began dating Landin, and asked Landin to move into an apartment with her and Child in 2004. The three moved into a duplex about a year later and then to a trailer home about a year after that. The relationship between Mother and Landin ended in 2008, but they reunited and began living together again briefly in 2010. Later that year, Mother married Husband. Shortly afterward, Mother and Child began counseling at SafePlace because of "incidents" with Husband. While receiving services at SafePlace, Child made no outcry of abuse involving Landin.

In 2016, when Child was fourteen, Mother discovered that Child had been "stay[ing] up all night texting," and Mother looked through Child's phone "to see who [Child] was texting with." Mother found some messages about Child "trying to hurt [her]self" and asked about them. Child initially said that she was unhappy and being bullied at school, but Mother said that was not a good reason for Child to harm herself and asked again. Child testified, "At first I kept telling her I just wasn't really happy. But then she started crying, and I got a little, I guess, sad. And I don't know the word, but at the end I just told her the reason why, so that made her upset." Child made an outcry of sexual assault to Mother, stating that Landin "had touched [her] in a certain way that wasn't right." Child later specified that Landin had penetrated her vagina with his finger. Mother took Child to meet with the police, and an officer interviewed Child in a patrol car. Within the next couple of weeks, Child also recalled and

---

[1] We provide only a brief summary of the evidence at trial because there is no sufficiency issue presented on appeal. *See* Tex. R. App. P. 47 (requiring appellate court to issue opinion that is brief as practicable but addresses all issues raised and necessary for resolution of appeal); *see also* Tex. Code Crim. Proc. art. 38.07 (providing that child victim's testimony alone is sufficient to support sexual-abuse conviction).

disclosed that Landin attempted to have her perform oral sex on him. Landin was subsequently charged with the offenses involved in this appeal.

Several witnesses testified at the trial in 2019, including medical and counseling providers, Mother, Landin, and seventeen-year-old Child. Child testified that Landin sexually assaulted her when she was in first grade, during the time that they lived in the trailer home. She also had flashbacks of him attempting to have her perform oral sex when she was in "pre-K," during the time that they lived in the apartment. Child stated that she remembered the earlier incident after she remembered the second incident that happened at the trailer home. She testified,

> I had like flashbacks that I was kind of wondering what that was. From then until I got to fifth grade. . . . I just started remembering more things. I was just having a lot of flashbacks, which, in that moment, I was realizing what had happened, because mostly my mom had a talk with me in fifth grade . . . [about] just growing up and how I shouldn't let a guy touch me at all.

Child stated that she was "a hundred percent" certain that Landin was the person who committed these offenses.

In 2011—after Child was abused but before she made her outcry—Mother and Child received counseling at SafePlace. During a hearing outside the presence of the jury, the district court excluded the SafePlace counseling records. Additionally, the district court excluded proffered testimony from Anna Valverde, a clinical social worker at SafePlace, as to counseling sessions she provided to Child in 2017, which focused on the impact of the sexual abuse that Child suffered rather than the details of it. However, the district court noted that some of Valverde's testimony was admissible because it contradicted Mother's prior testimony denying that Child had witnessed Husband's abuse of Mother. Previously admitted records from

3

Carousel Pediatrics noted that Child had received counseling because Mother sustained domestic abuse. Given the prior evidence, the district court ruled that Landin could ask Valverde whether Mother had indicated that she was married to the man who perpetrated physical abuse against her and that Child had witnessed that abuse.

Before the jury, Valverde testified that she conducted Mother's intake and referral for counseling in January of 2011. Valverde stated that Child was also involved in that counseling "basically throughout the year of 2011." Valverde used the SafePlace records to refresh her memory and testified that Mother sought counseling because of her "husband's" escalation of violence from September to December of 2010 and that Mother reported that Child witnessed the violence. Further, Valverde testified that the "husband" Mother was complaining about in counseling was not Landin.

In the spring of 2016, Child saw Dr. Kelly Liker of Dell Children's Medical Center at a clinic located in the Center for Child Protection. Child told Dr. Liker that she felt sad remembering things that had happened when she was little involving her mother's ex-boyfriend, "Marcos [Landin]." Medical records from Dell Children's Medical Center were admitted into evidence.

The parties disputed the admissibility of medical records concerning Child's mental-health treatment at Shoal Creek in the summer of 2016. Those records were initially excluded, but the district court later admitted a redacted version into evidence. The admitted Shoal Creek records included Child's history of experiencing bullying; her reports of feeling depressed, having suicidal ideation, and believing that "people hate me" and "don't like me how I am now"; her increased desire for "superficial cutting" and "digging nails into skin"; and her starting on Prozac "to address her mood and anxiety symptoms" and Zyprexa for "agitation." In

4

the admitted records, Child also stated her belief that she is "bipolar because of her mood swings" and her concern about Mother saying that "she was thinking of sending [Child] to Mexico because she thinks it would be better for [Child]." Those records also listed the names of other men living in the home with Child, including Stepfather (not Mother's Husband) and Uncle.

The redacted Shoal Creek records removed references to an incident that occurred after Child made her outcry and to Child's sexual behavior that the parties agreed to redact under the "rape-shield law," *see* Tex. R. Evid. 412, and that the district court deemed irrelevant. The incident involved a man that Child met and messaged through Facebook who solicited Child to perform sexual acts. On voir dire outside the presence of the jury, Mother testified that she called police about the Facebook incident and that Child received mental-health treatment at Shoal Creek because Child wanted to kill herself. Child also testified outside the presence of the jury about her mental health, and when asked if she recalled reporting her feelings of anger or concern that she was bipolar, Child stated that "all [her] anger would go to depression" or sadness. Landin pointed out that during Child's hospitalization at Shoal Creek, she reported that she thought an "hombre" was hiding in a closet and that the man referenced was not Landin. While at Shoal Creek, Child also reported that she had been hearing voices since she was ten.

Before the jury, Child testified that she sometimes heard voices telling her to hurt herself and that she started cutting her arm in fifth grade. Child reported to Dr. Liker that she stopped cutting herself in 2015. Child recalled that she spent a lot of time with a babysitter when she was little, that Landin worked during the day, and that Mother previously worked a lot. Child missed Mother and wished that Mother had instead spent more time with her. Child stated that Mother now tries not to work "so she can focus on me and spend more time with me."

The State's expert psychologist Dr. William Carter, who did not examine Child, testified generally about sexual-abuse allegations made by children and causes of children's mental-health problems. He stated that delayed outcries are common; that it is typical for children to forget some details around the specific traumatic event that occurred; that a child's reports of "hearing voices in their head" are often experiences of uncontrolled anxiety rather than psychosis; and that if something happened to a young child similar to another trauma that happened a few years later, the later event might help the child recall and remember what had happened before. He acknowledged that a person could be suicidal without having been a sexual-abuse victim, but he noted that sexual-abuse victims "are overrepresented in psychiatric hospitals [and] in prisons."

Dr. Carter also testified about reasons for a child's false allegations of sexual abuse. He stated that some reasons included "attention seeking"; "false memory" resulting from the changing of a memory over time as subsequent experiences are added or blending things that are real with those that are not; and a desire to please parents. He stated that a child could want to please a parent if the child reported to the parent that something happened, but the parent disbelieved the child's explanation and pressed the child to "tell the truth." He testified that bullying can affect a child's mental state, causing loneliness, depression, anxiety, and potentially, suicidal ideation. He also agreed that someone who is bullied may exhibit behavior such as cutting, but he opined that there are usually other reasons for that. Additionally, Dr. Carter testified that children who have traumatic household experiences, such as domestic violence, can experience the same symptoms as children who suffer from sexual abuse. He noted that "domestic violence in and of itself does not cause false memories," although "the more troubled a child's background, the more she has to sort through in telling us her life story."

6

Landin, who later married and had a daughter of his own, testified that he did not know why Child made her accusations, and he denied them. He also testified that he told police about his willingness to take a polygraph examination but it was not arranged. He acknowledged that before this case, he had a DWI charge in 2009 but said he was never accused of any other crime. Several witnesses testified that Landin is trustworthy and a person of good moral and ethical character around children. Landin's employer, who had known Landin for almost two decades and had him on his work crew since Landin was sixteen, testified that Landin had a "great reputation," that he knew of no one who would say otherwise, and that if he had a son, he would want him to be just like Landin.

After both sides rested and closed, less than an hour into the jury's deliberation, the district court received the jury's requests for Child's initial interview with police on the date of her outcry, Child's interview at the Center for Child Protection, and "to review all evidence that was submitted."[2] The district court responded, instructing the jurors that they could consider only the evidence admitted during trial and provided them with all the admitted exhibits. The jury ultimately convicted Landin, and the district court assessed punishment. Landin filed a motion for new trial that was denied by operation of law. This appeal followed.

## DISCUSSION

### Right to Present Complete Defense

Landin contends that the district court's rulings limiting the content and scope of some witnesses' testimony and excluding certain records from evidence hindered his ability to present a complete defense and denied his rights to due process and a fair trial. Specifically, in

---

[2] During their testimony, a police officer and a forensic interviewer referenced videos of their interviews with Child but those videos were not admitted into evidence.

7

four sub-issues, Landin contends that the district court abused its discretion by: (1) not permitting defense counsel to "thoroughly" cross examine Child about her mental-health history and mental state to determine the reliability and credibility of her memory; (2) not permitting defense counsel to "thorough[ly]" and "complete[ly]" cross examine Mother about certain experiences Child had that could have contributed to a false memory; (3) not allowing SafePlace counselor Valverde to provide "full testimony" about her sessions with Child and the effects on Child of the "family violence" referenced in the SafePlace records; and (4) excluding records from Child Protective Services and "medical records" showing Child's mental-health history and her state of mind.

**Standard of Review**

We review a trial court's decision to limit or exclude topics from cross-examination under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 917 (Tex. Crim. App. 2016); *see Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (noting that "trial judge has wide discretion in limiting the scope and extent of cross-examination"). Similarly, we review a trial court's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson*, 490 S.W.3d at 908. We uphold the trial court's ruling if it was correct on any applicable theory of law. *Id.* We reverse that ruling only if it "falls outside the zone of reasonable disagreement." *Id.*

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see id.* amend. XIV. The Confrontation Clause secures an opposing party's opportunity to conduct

8

cross-examination, "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); *accord Johnson*, 490 S.W.3d at 909. Thus, the Sixth Amendment right to cross-examination allows for an attack on the general credibility of a witness or "to show their possible bias, self-interest, or motives in testifying." *Johnson*, 490 S.W.3d at 909 (quoting *Hammer*, 296 S.W.3d at 561). "A trial judge can abuse his or her discretion by excluding admissible evidence that is offered by the defendant to demonstrate the complainant's motive to falsely accuse him of molestation." *Id.*

However, trial judges may place limitations on the scope and extent of cross-examination so long as those limitations do not infringe on the Confrontation Clause's guarantee of "an opportunity for effective cross-examination." *Id.* Wide latitude is afforded to trial judges' restrictions on cross-examination based on criteria such as "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 910 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). But the Constitution "could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent [that] he could not present a vital defensive theory." *Id.*

Cross-examination "to show that [a] witness has suffered a recent mental illness or disturbance is proper, provided that such mental illness or disturbance is such that it might tend to reflect upon the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 30 (Tex. Crim. App. 1987). But "the mere fact that the State's testifying witness has in the recent past suffered or received treatment for a mental illness or disturbance does not, for this reason alone, cause this kind of evidence to become admissible impeachment evidence." *Id.* The admissibility of mental-illness evidence is necessarily an ad hoc decision, and "great deference" is given to the

trial court's decision on admissibility. *Id.*; *see Pierce v. State*, No. 03-00-00307-CR, 2001 Tex. App. LEXIS 829, at *11 (Tex. App.—Austin Feb. 8, 2001, no pet.) (mem. op., not designated for publication). In determining whether mental-illness evidence is relevant, courts look to the purpose for offering the evidence and whether there is a direct or logical connection between that evidence and the proposition to be proved. *Goodwin v. State*, 91 S.W.3d 912, 917 (Tex. App.—Fort Worth 2002, no pet.); *see Lester v. State*, No. 06-11-00118-CR, 2011 Tex. App. LEXIS 9728, at *3 (Tex. App.—Texarkana Dec. 14, 2011, no pet.) (mem. op., not designated for publication).

An evidentiary ruling that denies a criminal defendant the constitutional right to present a complete defense is subject to a harm analysis. *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (noting that "the specific rule that applies to this error in admitting evidence is Rule of Evidence 103(a)," which states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and that "the standard of review under that rule is the same as that under Rule of Appellate Procedure 44.2(b)"). Exclusion of evidence in a criminal trial should be disregarded unless it is constitutional error or non-constitutional error that substantially affects the defendant's rights. Tex. R. App. P. 44.2(a)–(b). When a defendant's evidence is excluded, it is constitutional error "only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. Thus, exclusion of evidence is not prejudicial if the defendant was not prevented from presenting the substance of his defense to the jury. *Id.*

10

## 1. Limitations on Cross-Examination of Child

Landin contends that the district court abused its discretion by not permitting defense counsel to "thoroughly" cross examine Child about her mental-health history and mental state to determine the reliability and credibility of her memory. The district court made two partially adverse rulings limiting Child's cross-examination by excluding: (1) any inquiry about her Shoal Creek hospitalization in 2016 and (2) records from SafePlace documenting the counseling services provided to Child and Mother  However, a redacted version of Child's hospitalization records from Shoal Creek was subsequently admitted into evidence, and it contained multiple references to her mental-health history and mental state, including: her experiences of bullying; her feelings of depression, suicidal ideation, and believing that others hated or disliked her; her increased desire for "superficial cutting" and "digging nails into skin"; her concerns that she was bipolar; and the Prozac and Zyprexa medications that she took for her "mood and anxiety symptoms" and "agitation."

Further, although the SafePlace records were excluded, the district court allowed Landin to explore certain information within them, including: the fact that Child had been to SafePlace for counseling after the charged sexual abuse but before she made her outcry; that there was a concern about Child's safety as to mother's "boyfriend" (Husband); and that Child made no outcry about Landin and "never mentioned [him] during any of those sessions despite it being a safe place for her to talk."

On this record, even if we were to conclude that the district court erred as to the limitations on Child's cross-examination, we could not conclude that it was constitutional error, as Landin contends. *Cf.* Tex. R. App. P. 44.2(a). As we have noted, the Constitution "could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness

11

concerning possible motives, bias, and prejudice to such an extent [that] he could not present a vital defensive theory." *Johnson*, 490 S.W.3d at 910. When a defendant's evidence is excluded, it is constitutional error "only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. If not, it is non-constitutional error. *See id*. at 666 (concluding that because erroneous exclusion of evidence "did not prevent appellant from presenting a defense" such error "was not of constitutional dimension").

Here, the district court's ruling did not prevent Landin from using the Shoal Creek hospitalization records to present his defense because the jury ultimately received those records, which, despite their redactions, contained multiple references to Child's mental-health history and mental state. After the records were admitted, Landin did not re-call Child to cross-examine her with those records.

Similarly, as to the exclusion of the SafePlace records, Landin was able to present the content of the records through other evidence. He was able to establish through his questioning of Child that she had been to SafePlace in 2011 due to concern for her own safety and that of Mother. Landin used that information during Dr. Carter's testimony to support the defensive theory that other trauma in Child's life may have caused false memories. Also, the court also permitted Landin to call Valverde, who testified that Child and Mother received counseling at SafePlace in 2011. Valverde relied on the information in the SafePlace records to refresh her memory and testified that Mother sought counseling because of her "husband's" escalation of violence from September to December of 2010. Valverde also testified that according to Mother, Child witnessed the violence. Valverde further testified that the "husband" Mother complained about in the counseling sessions was not Landin. Moreover, during closing

12

argument, Landin referenced Child's 2011 counseling at SafePlace for household violence that did not involve him and highlighted the lack of any outcry against him at the time:

> So the more trouble in a child's background, the more she has to sort through. Dr. Carter said that. This doesn't happen in a vacuum. Marcos [Landin] left her life around 2009, 2010. This outcry happened in 2016. Years have passed. So it didn't happen in a vacuum. You need to look at what happened during that time. What happened during that time? You have to take everything into account. She received counseling in 2011 and before 2016 at SafePlace, a safe place where they are trained to talk to the children. They're trained to look for signs of abuse. And she was there, and she said that, yes, she had the opportunity to express her fears and to talk about her life, and this never came up. She was there at SafePlace because some other thing happened. There was violence that escalated in her household, not with him, Marcos Landin.

The record reflects that Landin was able to present his defensive theories at trial incorporating the admitted evidence concerning Child's mental state and mental-health history. Because he failed to show that the district court's limitations on his cross-examination of Child deprived him of the opportunity to assert a vital defensive theory and because the limitations did not deprive him of a substantial right, any error was non-constitutional and is disregarded under the proper standard in Texas Rule of Appellate Procedure 44.2(b). *See Potier*, 68 S.W.3d at 666; *see also* Tex. R. App. P. 44.2(b).

### 2. Limitations on Cross-Examination of Mother and SafePlace Counselor's Testimony

Next, Landin contends that the district court abused its discretion by not permitting defense counsel to "thorough[ly]" and "complete[ly]" cross examine Mother about certain experiences that Child had that could have contributed to a false memory. Details of the domestic abuse—physical and sexual—that Mother sustained are set forth in the SafePlace

13

records that were excluded from evidence. Those records also show that Mother obtained a protective order against Husband, the perpetrator of the domestic abuse.

Landin further contends that the district court abused its discretion by not allowing Valverde to provide "full testimony" about her sessions at SafePlace with Child and about the effects on Child of the "family violence" referenced in the SafePlace records. He contends that Valverde should have been allowed to testify about her three counseling sessions with Child in 2017 as to the effects that Child attributed to her sexual abuse. Outside the presence of the jury, Valverde testified about those counseling sessions in 2017, after Child made her outcry. Valverde stated that those sessions focused on the impact of the sexual abuse Child suffered rather than the details of it and that Child reported that she had difficulty sleeping and that she had "memories and triggers at home" that reminded her of the sexual abuse that had occurred.

However, even if we were to conclude that the district court erred as to the limitations on Mother's cross-examination or on Valverde's testimony, we could not conclude that either was constitutional error, as Landin contends. *Cf.* Tex. R. App. P. 44.2(a). Exclusion of evidence deemed inadmissible under the Rules of Evidence can rise to the level of constitutional error if doing so "effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. Here, the district court admitted records from Carousel Pediatrics noting that Mother sustained domestic abuse and that Child had also received counseling. Valverde testified about Mother's report that Child had witnessed domestic violence, which defense counsel contended was "a big part of Mr. Landin's defense." Valverde also testified that Child was involved in counseling "basically throughout the year of 2011." Further, the records admitted into evidence from Child's mental-health hospitalization at Shoal Creek in 2016

14

contained substantial detail about her mental state, including her hearing voices, her suicidal ideation, her concern that she was bipolar, her history of cutting herself, and her prescribed medications for "mood and anxiety symptoms" and "agitation." Additionally, Landin elicited testimony from Dr. Carter tending to support the false memory-theory, including his expert opinions that children who have traumatic household experiences, such as domestic violence, can experience the same symptoms as children who suffer from sexual abuse; that "the more troubled a child's background, the more she has to sort through in telling us her life story"; and that false memories could be created from unrelated events, blending things that are real with those that are not.

The record reflects that neither the limitation on Mother's cross-examination concerning certain experiences Child had to Husband's domestic abuse of Mother nor the limitation on Valverde's testimony as to her sessions at SafePlace with Child or the effects of Child's exposure to "family violence" prevented Landin from establishing facts that were relevant to his false-memory theory. Landin was able to question Dr. Carter using hypotheticals based on the effects of children's exposure to domestic violence, establish the similarity of symptoms in children who suffer from domestic violence and children who suffer from sexual abuse, and present a defensive theory to the jury through Dr. Carter's acknowledgement that certain events raised the possibility of a child's false memories. Thus, any error in the district court's rulings as to limitations on Mother's cross-examination or Valverde's testimony was non-constitutional, did not deprive him of a substantial right, and is disregarded under the proper standard in Texas Rule of Appellate Procedure 44.2(b). *See id.* at 666; *see also* Tex. R. App. P. 44.2(b).

15

### 3. Exclusion of Records from Child Protective Services and "Medical Records"

Finally, Landin contends that the district court abused its discretion by excluding "pertinent CPS [Child Protective Services] and medical records" showing Child's mental-health history and her state of mind. Landin fails to identify the "medical records" that are the basis of this complaint. We will construe this contention as challenging the exclusion of the SafePlace records relating to Child's mental-health history and her state of mind.

As the State correctly notes, the primary recipient of counseling services at SafePlace was Mother, not Child. Mother sought counseling at SafePlace because of the domestic abuse perpetrated against her by Husband, not Landin. During his offer of proof, Landin's counsel contended that the SafePlace records contained evidence that Child heard voices for a long time, heard arguments in her house "going to the home situation leading to the outcry," and that Child was "pretty much abused" by Husband physically, but not sexually. When the district court questioned the relevance of that information to Landin's charged acts of sexual abuse against Child, Landin's counsel stated,

> We believe it's relevant, Your Honor, because it could be the basis for maybe a false memory that was created based on all the trauma that she suffered. That is something that maybe the experts can talk about. But we believe that it's relevant for that. It could be a false memory. It could be misattribution. It could be something like that . . . [is] the reason why she's actually saying that Marcos [Landin] did something to her.

However, even if we were to conclude that the district court erred as to the exclusion of the records, we could not conclude that it was constitutional error, as Landin contends. *Cf.* Tex. R. App. P. 44.2(a). Exclusion of evidence deemed inadmissible under the Rules of Evidence can rise to the level of constitutional error if doing so "effectively precludes

16

the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. As we have discussed, the jury heard about the reports of domestic abuse through other evidence admitted during trial. Landin elicited testimony that Child had been to SafePlace for counseling after the charged sexual abuse but before she made her outcry, that there was a concern about Child's safety as to Mother's "boyfriend" (Husband), and that Child made no outcry about Landin and "never mentioned [him] during any of those sessions despite it being a safe place for her to talk." The jury had ample evidence of Child's mental health from the records of her hospitalization at Shoal Creek, and Landin pursued his false-memory theory through his questioning of Dr. Carter, who testified that children exposed to domestic violence and children who suffer from sexual abuse can experience the same symptoms, that a false memory can result from the changing of a memory over time as subsequent experiences are added, and that false memories can be created from unrelated events, blending things that are real with those that are not. We conclude that Landin has not shown that the district court's exclusion of the SafePlace records deprived him of the ability to show Child's mental-health history and her state of mind as it pertained to his defensive theory at trial.

With regard to the CPS records, Landin contended in his offer of proof that he wanted to use the records to show that Child once claimed that she was in Mexico with him and that there were other reports of family violence. But the jury heard about that information through other admitted evidence. As we have noted, the jury heard reports about Mother suffering domestic abuse perpetrated by Husband, Child witnessing that domestic abuse, and Mother expressing concerns about Child's safety around Husband. The jury also heard from pediatric nurse practitioner Kimberly Ferris, who prepared a document summarizing her well-

17

child examination of Child in February 2016 that was part of the excluded CPS records. Ferris testified,

> I wrote in the office at the well-child visit, "Reports previous history of sexual abuse from stepfather, Marcos [Landin]. Marcos is in Mexico per family. Events happened between ages three and four in Mexico and in the U.S. between ages six and seven. Police involved, and report has been made. Patient is starting counseling today. No contact with Marcos. Mother of child is aware." And then the only additional thing in the CPS report was "She denies ongoing abuse, denies penetration. Per patient, she was only touched by him."

Because Landin's professed need for the CPS and SafePlace records was met through other admitted evidence, he failed to demonstrate that the district court's ruling excluding those records deprived him of a substantial right. *See Potier* at 666. Thus, any error in the district court's rulings excluding the SafePlace and CPS records was non-constitutional and is disregarded under the proper standard in Texas Rule of Appellate Procedure 44.2(b). *See id.*; *see also* Tex. R. App. P. 44.2(b).

Having considered all of Landin's sub-issues, we conclude that Landin was able to present the substance of his defenses to the jury and that the district court's limitations on the cross-examination of some witnesses and the exclusion of certain evidence did not form such a vital portion of the case that Landin was effectively precluded from presenting a defense. *See Potier*, 68 S.W.3d at 665. Accordingly, we overrule Landin's sole appellate issue.

## CONCLUSION

We affirm the district court's judgments of conviction.

_____

Gisela D. Triana, Justice

18

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   December 11, 2020

Do Not Publish