**Opinion filed December 21, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00243-CR

_____

## BRENDAN LAYNE JENKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CR04529**

### M E M O R A N D U M   O P I N I O N

Appellant was convicted of capital murder for causing the deaths of Ashlyn Smith, Patricia Stephens, and Earl Stephens during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a)(7) (West Supp. 2023). The State did not seek the death penalty. Accordingly, the trial court sentenced Appellant to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice without the possibility of parole. *See* PENAL § 12.31(a)(2) (West 2019);

TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1 (West Supp. 2023). In one issue, Appellant contends that the trial court erred when it excluded the opinion testimony of Appellant's parents concerning their perception of Appellant's sanity at the time of the offense. We affirm.

## I. *Factual Background*

Appellant called 9-1-1 at 7:20 a.m. on July 25, 2020 to report that there were "three dead people" on rural residential property just outside De Leon. Appellant told the dispatcher that he had shot his girlfriend and her grandparents, later identified as Ashlyn Smith, Patricia Stephens,[1] and Earl Stephens.

Lawrence Jonap, chief of police for the De Leon Police Department, drove up the dirt driveway and saw Appellant sitting outside of the residence on a futon cushion with his hands up. Appellant confirmed that he was the shooter, and that he called 9-1-1. After Chief Jonap took Appellant into custody, he found Smith inside an RV camper, and Patricia and Earl in a separate house on the property. Smith died from multiple gunshot wounds to her head, right shoulder, chest, left forearm, and right wrist. Patricia suffered one gunshot wound to the head, and Earl was shot in the neck and right forearm.

Chief Jonap transported Appellant to the Comanche County Jail, where he was interviewed by Texas Ranger Jason Shea. According to Appellant, he and Smith moved into an RV camper on Patricia's and Earl's property in the beginning of June. But Appellant, who converted to Islam in March of 2020, was struggling to balance his faith and living with Smith. Appellant described their relationship as "rocky" and "on and off" and stated that he had concerns about Smith's religious beliefs.

In the early morning hours of July 25, Appellant was reading the Quran on Smith's cellphone. He was using Smith's cellphone because he had thrown his into

---

[1]Because Patricia and Earl Stephens share the same last name, we will refer to them by their first names.

Lake Proctor a few days prior. Around 4:00 a.m., Smith's cellphone died, and Appellant "started to get really frantic," began praying "really loudly," and "freaking [Smith] out." Smith took her cellphone, but Appellant threatened to kill her if she did not give it back; she complied.

Appellant later revealed that he began hearing voices that morning telling him to kill Smith and her grandparents or he "was going to go to hell." After Smith fell asleep on the couch, Appellant claimed that the voices told him, "[y]our only choice, if you want to go to heaven for eternity, is to kill as many nonbelievers as you can." The voices then told Appellant to "[s]tart with [Patricia] and [Earl]."

Around 6:45 a.m., Appellant walked to Patricia and Earl's house with his loaded Rock Island Armory 1911 pistol that he had recently purchased. Patricia was sleeping on a mattress on the kitchen floor, while Earl slept in a hospital bed in the kitchen area. Appellant shot Patricia once in the head before turning to Earl, and fatally shooting him twice. After Appellant shot Earl, he searched for Earl's Tramadol prescription, an opioid pain medication, because he "wanted to get high." Unable to find any pills, Appellant returned to the RV camper where Smith was sleeping. Appellant recalled shooting Smith once, then again after she started screaming. However, the autopsy revealed that Smith suffered seven gunshot wounds, which corresponds to the number of shell casings that were found near her body in the RV camper.

Appellant picked up two shell casings after shooting Smith, walked out to his van, and considered leaving. He told Ranger Shea that he contemplated shooting his neighbors, driving to Plano to see his father, or driving to Oregon, and "hurt[ing] more people" along the way. Appellant decided against "going on the run" when he realized that he had no gas, money, or ammunition. After determining he "had no way out," he called 9-1-1.

3

Appellant was charged with capital murder, and the State did not seek the death penalty. At trial, Appellant raised the affirmative defense of insanity. *See* PENAL § 8.01 (West 2021). In support of his defense, Appellant's mother, Cynthia Diane Christopher, and his father, Larry Layne Jenkins, testified that Appellant has experienced several "mental health episode[s]" since December of 2015. Appellant was arrested for assaulting Jenkins in April of 2016. Then, in September of 2016, Jenkins and Christopher took Appellant to a psychiatric hospital because he claimed to be hearing voices and was convinced that a device was implanted in his head. The hospital refused to accept Appellant as a psychiatric patient, so his parents enrolled Appellant in a thirty-day program at a mental health treatment center.

In October of 2016, Jenkins and Christopher took Appellant to a facility for mental health and substance abuse treatment after he again assaulted Jenkins. Appellant successfully completed the ninety-day inpatient program and was "completely normal" when they picked him up in February of 2017. However, Appellant claimed that he was still hearing voices at night, so he began seeing a psychiatrist, Dr. Anastasia Morgan, in March of 2017.

Dr. Morgan testified, and her records of Appellant's treatment were admitted. Appellant reported having symptoms of depression, anxiety, and "significant drug use," including using cocaine and opioids. Appellant likewise told Ranger Shea that he had been addicted to heroin and opioids "for about a year." Dr. Morgan noted that Appellant's anxiety corresponded with his drug use, and that his continued use of alcohol and drugs contributed to his psychotic symptoms.

Dr. William Lee Carter, a psychologist, met with Appellant on February 28, 2022 at the Comanche County Jail to perform a sanity evaluation. Dr. Carter determined that Appellant's psychotic episodes could be "directly related to substance abuse," and noted that the first time Appellant had reported hearing voices was when he was "high" on drugs. After concluding a five-hour interview session

4

with Appellant and reviewing Dr. Morgan's records and the evidence in the case, Dr. Carter determined that Appellant was sane at the time of the offense. He explained that Appellant's psychological disturbance "influence[d] his thought processes, but not to the extent that he could not appreciate right from wrong."

The trial court instructed the jury on Appellant's affirmative defense of insanity; the jury nevertheless found Appellant guilty of capital murder. Because the State did not seek the death penalty, Appellant was sentenced to life imprisonment without the possibility of parole. *See* PENAL § 12.31(a)(2); CRIM. PROC. art. 37.071, § 1.

## II. *Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Id.* We will not reverse a trial court's decision to exclude evidence, and there is no abuse of discretion, unless that decision lies outside of the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). Furthermore, we will not disturb a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that reasonably finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *De La Paz*, 279 S.W.3d at 344.

## III. *Analysis*

### A. *Applicable Law*

Texas law excuses a defendant from criminal responsibility if he proves the affirmative defense of insanity by a preponderance of the evidence. *See* PENAL § 8.01(a); *Ruffins v. State*, 270 S.W.3d 586, 591–92 (Tex. Crim. App. 2008). This

5

defense, if proven, excuses the defendant from criminal responsibility even though the State has proven every element of the charged offense, including the mens rea, beyond a reasonable doubt. *Ruffins*, 270 S.W.3d at 592. To establish this defense, it must be shown that, at the time of the conduct charged, the defendant—as a result of a severe mental disease or defect—did not know that his conduct was "wrong." *Id.* "'[W]rong' in this context means 'illegal.'" *Id.*

Properly admitted opinion testimony of a lay witness is sufficient to support a finding of insanity. *Pacheco v. State*, 757 S.W.2d 729, 733 (Tex. Crim. App. 1988). Rule 701 of the Texas Rules of Evidence permits a lay witness to testify to opinions or inferences that are: "(a) rationally based on the witness's perception; and (b) helpful [to the factfinder] to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701; *see also Davis v. State*, 313 S.W.3d 317, 349 (Tex. Crim. App. 2010). "Perceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002); *see Wade v. State*, 663 S.W.3d 175, 187 (Tex. Crim. App. 2022).

Because Rule 701 requires testimony to be based on a witness's perception, the witness must have personally observed or experienced the events about which he or she is testifying. *Davis*, 313 S.W.3d at 349. "As a general rule, observations that do not require significant expertise to interpret and which are not based on scientific theory can be admitted as lay opinions." *Id.*

The second requirement for admissibility under Rule 701 is that the lay opinion must be helpful to the trier of fact to either understand the witness's testimony or to determine a fact issue. TEX. R. EVID. 701(b); *Fairow v. State*, 943 S.W.2d 895, 900 (Tex. Crim. App. 1997). While there is no bright line indicating when a lay opinion may be helpful, general evidentiary considerations of relevance

6

and balancing will invariably assist the trial court in making such a determination. *Fairow*, 943 S.W.2d at 900. For example, a trial court properly acting within its discretion may determine that the confusing, misleading, or cumulative nature of a lay opinion renders it incapable of assisting the trier of fact and is thus improper under Rule 701. *Id.* (citing TEX. R. EVID. 403). This consideration is especially important when the lay opinion concerns one's culpable mental state. *Id.* The trial court must carefully consider such differences when deciding whether a lay opinion will help the jury or confuse and mislead them. *See id.*; *see also Lum v. State*, 903 S.W.2d 365, 370 (Tex. App.—Texarkana 1995, pet. ref'd) (holding that a witness's testimony regarding whether the defendant behaved negligently was properly excluded because the witness was "not shown to be an expert on negligence or to know the legal definition or standard of negligence").

Whether a lay opinion meets the fundamental requirements of Rule 701 is within the discretion of the trial court, and the trial court's evidentiary decision in that regard will not be reversed absent an abuse of discretion. *Fairow*, 943 S.W.2d at 901; *Davis*, 313 S.W.3d at 349.

B. *Lay Opinion Testimony as to Appellant's Sanity*

Appellant asserts that the trial court erroneously excluded his father's and mother's lay opinions as to his sanity at the time of the offense. Outside the presence of the jury, Appellant's trial counsel proffered lay opinion testimony from Jenkins and Christopher. Jenkins described Appellant as being "completely out of his mind" and "detached from reality" during his "psychotic episode[s]." The last time that Jenkins and Christopher had seen Appellant was July 14, 2020, when Appellant traveled to Plano for a few days. Although Christopher did not "see[] anything concerning," Jenkins noticed Appellant sitting on a swing in his back yard, "sitting, staring straight ahead," and "was completely unresponsive" when he called Appellant's name. Jenkins opined that Appellant could not have known right from

wrong when he shot and killed Smith, Patricia, and Earl. Jenkins and Christopher also watched the recorded interview between Appellant and Ranger Shea and opined that Appellant "did not know right from wrong" at that time.

When questioned by the State, Jenkins admitted that he knew Appellant was a heroin addict and had used heroin until early 2020. Jenkins also knew that Appellant had used crack cocaine, attempted to commit suicide by overdosing on Xanax, and "was drinking more than normal" by the spring of 2020. After their opinion testimony was proffered, the trial court ruled that Jenkins and Christopher were prohibited from rendering an opinion, in the presence of the jury, as to Appellant's sanity at the time of the offense. However, they could testify as to their observations of Appellant or their experiences with him without expressing a conclusion as to his mental culpability.

Applying the fundamental requirements of Rule 701 to the facts and circumstances of this case, we conclude that the trial court did not abuse its discretion when it excluded Jenkins's and Christopher's conclusions that Appellant did not know that his conduct was illegal. *See Fairow*, 943 S.W.2d at 898–99. The last time they had seen Appellant was approximately ten days prior to Appellant's commission of the charged offense, and Jenkins last spoke to Appellant "probably early in the week of July 25th . . . [m]aybe Monday," July 20, 2020, five days before he committed the offense. Because neither Jenkins nor Christopher had seen Appellant at or near the time that the offense was committed, they lacked the requisite personal knowledge to form an opinion as to Appellant's sanity at that time. Further, because they had not sensed or experienced Appellant's behavior immediately prior to or during the shootings, their proffered conclusions as to Appellant's sanity *at the time of the offense* were not rationally related to their underlying perceptions of Appellant's erratic behavior in the years leading up to the offense. *See Fairow*, 943 S.W.2d at 899–900.

8

For the same reasons, we further conclude that the proffered opinion testimony of Jenkins and Christopher would not have been helpful to the trier of fact in determining Appellant's sanity at the relevant time. *See* TEX. R. EVID. 701(b). The trial court thus acted within its discretion when it prohibited Jenkins and Christopher from rendering their opinions as to Appellant's sanity at the time of the offense.

C. *Alleged Error was Harmless*

Even if the trial court erroneously excluded the proffered testimony, and we do not hold that it did, Appellant suffered no harm by its exclusion.

The erroneous exclusion of evidence generally constitutes nonconstitutional error and is subject to review under Rule 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). An erroneous exclusion of evidence might rise to the level of a constitutional violation if it effectively prevents the defendant from presenting his defensive theory. *Walters*, 247 S.W.3d at 219 (citing *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)). However, the trial court's ruling in this case did not have that effect, as Appellant was not precluded from presenting a defense.[2] *See id.*

Nonconstitutional error that does not affect a defendant's substantial rights must be disregarded. *Stredic v. State*, 663 S.W.3d 646, 655 (Tex. Crim. App. 2022). An error affects a defendant's substantial rights only if it has a substantial and injurious effect or influence in determining the jury's verdict. *Id.* Put another way,

---

[2]*Walters* provides that the exclusion of evidence *might* rise to the level of a constitutional violation if, in relevant part, "a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *Id.* As we have said, the trial court did not err, much less clearly err, when it excluded Jenkins's and Christopher's proffered opinion testimony regarding Appellant's sanity at the time of the offense. Such evidence was inadmissible under Rule 701, and, as detailed below, other admissible evidence and a jury instruction were provided to the jury regarding Appellant's insanity defense. Appellant's trial counsel had the opportunity to cross-examine Dr. Morgan, Dr. Carter, and Ranger Shea regarding their relevant and admissible statements and to advance Appellant's insanity defense at trial by relying on their statements and Jenkins's and Christopher's admitted testimony.

an error does not affect a defendant's substantial rights if an appellate court has fair assurance from an examination of the record as a whole that the error did not influence the jury or had only a slight effect. *Id.* at 655–56.

We have reviewed the record and have fair assurance that the trial court's exclusion of Jenkins's and Christopher's ultimate conclusions as to Appellant's sanity at the time of the offense did not influence the jury's verdict, or if it did, it had only a slight effect. *See id.* They were permitted to testify that Appellant heard voices, attempted suicide, assaulted Jenkins at least twice, and was admitted to a facility for mental health and substance abuse treatment. Jenkins and Christopher detailed Appellant's history of mental illness for the jury, and thus the jury in its factfinding role could have determined, based on their testimony, that Appellant was experiencing the same detachment from reality during the shootings. As such, the jury could have found Appellant not guilty by reason of insanity even without Jenkins's and Christopher's proffered testimony concerning their opinions of Appellant's sanity at the time of the offense.

Nevertheless, and despite Jenkins's and Christopher's admitted testimony, Dr. Morgan and Dr. Carter testified that Appellant's mental health issues were related to his drug use. Dr. Carter testified that Appellant was sane at the time of the offense. Moreover, Appellant told Ranger Shea within hours after the shootings that he knew his conduct was wrong, and that he "wouldn't do this for anything" if he had it to do over again. Based on the record before us, we further conclude the trial court's exclusion of the proffered lay opinions was harmless.

Accordingly, we overrule Appellant's sole issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

December 21, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.